AMERICAN SURETY CO. et al. v. SHEERIN. (No. 7947.)

(Court of Civil Appeals of Texas. Dallas. April 13, 1918. Rehearing Denied June 8, 1918.)

1. BROKERS ⟨⟩71—COMMISSIONS—PERFORMANCE OF CONTRACT.

Where plaintiff insurance broker procured for defendant surety company application for a bond for two years on condition that 20 per cent. of the premiums should be paid to him and 5 per cent. to defendant's local agent, and defendant agreed to such conditions and issued the bond, plaintiff was entitled to commission on the second year's premium as well as on the first, regardless of any agreement made by defendant with one appointed, before the second premium was paid, to take the place of its local agent.

2. INSURANCE ⟨⟩84(2)—AGENTS—CONTRACT FOR COMMISSION — CONSTRUCTION — "ACCRUE."

Under a contract providing that all interest of surety company's agent in any premium to accrue on business secured should cease on termination of the contract, the unpaid portion of a premium on a bond executed and in force at the time the contract was terminated was not a premium which might "accrue" on the same bond in the future, "accrue" meaning to grow, increase, augment, additional.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accrue.]

3. INSURANCE ⟨⟩84(2)—AGENT'S COMPENSATION.

Where a continuation certificate was unnecessary to continue liability of defendant surety company on a bond, its local agents would be entitled to no commission for writing to and procuring from defendant's state agent such certificate, and in turn delivering it to the principal on the bond.

4. INSURANCE ⟨⟩84(2)—AGENT'S COMPENSATION.

Under contract by which a surety company agreed, among other things, to pay to those who succeeded its local agent 20 per cent. on all renewal business effected, successors would not be entitled to commissions on a bond procured by an insurance broker during employment of local agent, although premium therefor had not been paid.

5. INSURANCE ⟨⟩84(1)—AGENT'S COMMISSION—CONSIDERATION.

Even if a surety company's general agent unequivocally promised to pay commissions to local agents, where the company was bound to another, it would not be bound by the promise, since it would be without consideration.

6. JUDGMENT ⟨⟩310—CORRECTION AS TO PARTIES—DIRECTED VERDICT.

Where the court was authorized to direct a verdict, and in so doing directed verdict against one not served with citation, it was equally authorized to set it aside as to such person and enter judgment accordingly, directed verdicts being in effect judgments of the court which may be corrected.

Error from Dallas County Court; T. A. Work, Judge.

Action by G. G. Sheerin against American Surety Company and another. Directed verdict for plaintiff, and defendants bring error. Judgment affirmed.

Adams & Stennis and Thompson, Knight, Baker & Harris, all of Dallas, for appellants. Crane & Crane and J. F. Evans, Jr., all of Dallas, for appellee.

RASBURY, J. G. G. Sheerin sued American Surety Company in the court below for $500. Sheerin alleged that he was an insurance broker, and as such induced the Security National Bank of Dallas, which desired to make bond in the sum of $500,000, for a period of two years, for the purpose of indemnifying D. E. Waggoner, treasurer of the city of Dallas, and the sureties on his bond to the city of Dallas, against the failure of the Security National Bank to pay over all sums of money, etc., deposited with it by Waggoner, to permit the American Surety Company to execute said bond as surety for the bank, and for which the American Surety Company charged a fee or premium of $5,000, and for which service American Surety Company agreed to pay Sheerin 20 per cent. of the premium, or $1,000, of which $500 had been paid, and the remaining $500 due, but payment of which American Surety Company had refused, although they had collected from the Security National Bank. The American Surety Company answered that Blanton, Thomas & Co., who subsequent to the transaction became their local agents, claimed the remaining $500 was due them, and had retained from moneys due the American Surety Company that amount; and that, while it was ready and willing to pay the money to whomsoever was entitled thereto, it desired to avoid a double liability, and prayed accordingly that Blanton, Thomas & Co. be made parties to the suit. Citation was issued and served upon Blanton, Thomas & Co., who answered, in substance, that the bond covered a period of one year only, and was secured by Lucy, the state agent of American Surety Company, who permitted Matthews, the local agent at Dallas, to issue the bond and collect his commission upon the premium of $2,500,

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and that after the bond was executed, and before the year which it covered expired, they became the local agents of American Surety Company, and thereafter when the bond expired the same was through their efforts renewed and extended to cover an additional year, and by reason whereof they were, under their contract with the American Surety Company, entitled to the commission. Blanton, Thomas & Co. further alleged that, after they became local agents for the American Surety Company, its state agent acknowledged that they were entitled to the commission, and led them to believe such commission would be paid to them, and promised and obligated the American Surety Company to pay it. There was trial before jury, and upon conclusion of the testimony the jury were peremptorily instructed to return verdict for Sheerin against the American Surety Company for $500 and interest, and for the American Surety Company against Blanton, Thomas & Co., and J. W. Blanton, John M. Thomas, George M. Easley, and L. F. Boulware, the individual members thereof, for similar sum.

The facts of controlling importance deducible from the testimony are, in substance, these: D. E. Waggoner was elected treasurer of the city of Dallas for a period of two years from November 2, 1914. To secure the municipality in the performance of his duties as treasurer, he executed bond signed by individuals. He and his sureties selected as depository for the city's funds, securities, bonds, etc., coming into his possession as treasurer, the Security National Bank. The bank was required to and did, on November 10, 1914, execute in favor of Waggoner and the sureties upon his bond to the city of Dallas a bond with the American Surety Company as surety, reciting that Waggoner had been elected city treasurer for two years from November 2, 1914, and as such treasurer had given bond to the city in the sum of $1,000,000, with sureties, reciting them, and that Waggoner and the sureties had selected the Security National Bank of Dallas as depository for all moneys, bonds, and securities of the city of Dallas, and that said bank desired to secure said Waggoner and his sureties against any loss on its part of any such money, bonds, and securities so deposited with it to the extent of $500,000, and that the execution of the bond evidenced the obligation of American Surety Company to pay said sum to Waggoner and his said sureties in case of the failure of the Security National Bank, during the time Waggoner was city treasurer, to pay over on legal order all moneys deposited with it by Waggoner as treasurer, and to properly account for all bonds and other securities similarly deposited, etc. Prior to and at the time this bond was executed Sheerin was an insurance broker in the city of Dallas. Similarly, American Surety Company had a local agency in the city of Dallas in charge of D. J. Matthews. Sheerin, at request of Wag-

goner, secured from Security National Bank an application to American Surety Company for it to make the required bond. The application stipulated that the bond was for 24 months. At request of Edwin Hobby, cashier of the bank, who objected to paying the full two years' premium in advance, it was provided in the application that one-half thereof should be paid during the first year of the bond and one-half during the second year. The American Surety Company agreed to, and, as we have shown, did, make the bond, issuing it through its Dallas agency. The American Surety Company's charge or premium for executing the bond was $5,000 for two years, upon which amount they agreed to pay Sheerin 20 per cent., or $1,000, and Matthews 5 per cent., or $250; it being the custom, as well, to pay brokers who secured the business, and local agents through whose office the business passed, commissions so proportioned. In accordance with the arrangement, when the bond was executed and delivered the American Surety Company paid Sheerin $500, being 20 per cent. of the premium collected by the company. When the second payment on the premium matured, Sheerin collected the amount from the Security National Bank in check payable to American Surety Company, and remitted same, with request that the company in turn remit his fee, which was not done because the commissions were claimed by Blanton, Thomas & Co. In that connection, Blanton, Thomas & Co., several months subsequent to the transactions detailed, succeeded Matthews as local agents of the American Surety Company. The agency agreement was in writing, and provided, among other things, that Blanton, Thomas & Co. should, on all original and renewal business effected, receive as commissions 20 per cent. on the premium paid to the company. There was also an agreement between the parties that Blanton, Thomas & Co. should be paid 5 per cent. of all premiums collected from business accepted by the company from brokers with whom the company at that time had relations. When Blanton, Thomas & Co. took over the American Company agency they had never seen and had no knowledge of the terms of the bond executed in favor of Waggoner and his sureties, and assumed that it was for one year and subject to renewal. For the purpose of securing a renewal of same, they wrote Lucy, state agent of American Surety Company, in respect thereto, and was furnished by the state agent with what is termed a "continuation certificate," signed by the company, to be attached to the bond, and which, in substance, provides that, in consideration of the payment of the premium for the second year, the bond is continued for another year on the same terms. The certificate was delivered to the Security National Bank, with the statement that the premium would be collected in due course. Later, when an effort was made to collect the premium, they were informed that it had been paid to Shee-

rin. Subsequently, Blanton, Thomas & Co. retained money belonging to American Surety Company sufficient to cover 20 per cent. of the premium collected on the bond for the second year, which was the amount of commissions to be paid them under their agency contract for all business effected by them originally or by renewal. Lucy, state agent for American Surety Company, advised Blanton, Thomas & Co. that the premium on the Security National Bank bond was business belonging to their agency, and that they were entitled to the commission which would arise on the second year payment, and agreed to pay the commission to Blanton, Thomas & Co.

The controversy being three sided, counsel for Blanton, Thomas & Co., plaintiffs in error, have been compelled, in order to technically preserve their issues against all parties, to repeat certain assignments, but, due to the conclusions we have reached, it will only be necessary for us to discuss the issues as such.

[1] In natural order, this brings us to a consideration of the court's action in directing verdict for Sheerin, which is assigned as error. In determining that issue we are concerned only with the facts relating to the securing of the bond originally, and upon which Sheerin's rights rest, since at that period Blanton, Thomas & Co. were not the agents of the American Surety Company, and in no manner participated in the transaction, and since Sheerin can in no manner be bound by subsequent acts of parties claiming adversely to him, in which he did not participate and to which he did not consent. The net result of the original transaction was, as shown by the evidence, that Sheerin, the broker, secured from the Security National Bank its application to the American Surety Company to make the required bond for a period of two years, on condition that the 25 per cent. commission paid by the American Surety Company in such cases to its agents, 20 per cent. should be paid to Sheerin, and on the further condition that the Security National Bank be permitted to pay the premium in two installments, one-half during the first year covered by the bond and one-half during the second year. The American Surety Company and its local agent agreed to the conditions, and the bond was issued through the local agency, was delivered to the bank, which, according to the arrangement, paid the one-half of the premium then due, and a year subsequently the other half. It is thus obvious that Sheerin had concluded every essential step necessary to entitle him to his compensation under his arrangement with American Surety Company. The fact that the company extended credit to the bank did not reduce the period of the bond to any less term than two years, or lessen the liability of the bank to pay the premium when due, or require any other act on the part of Sheerin in order to earn his commission. The transaction was completed and all parties bound. It is not uncommon for insurance companies to extend credit in payment of premiums, and when proven such extensions are held to be a waiver of policy provisions requiring actual payment in order to create liability. Had the bank failed to pay the premium when it matured, it may be that the American Surety Company would not have been bound to Sheerin; but since the bank did pay it, and since Sheerin secured the business, we see no reason why he is not entitled to the fruits of his labor.

[2] Counsel for defendant in error argue, however, that since Sheerin's commission was a portion of that allotted to Matthews, the local agent, at the time the bond was written, Sheerin's right to the commission is no greater than the former's, and that under Matthews' contract he had no interest in the commission when the last installment was paid. Matthews ceased to be the agent of the American Surety Company about May 1, 1915. The second installment on the premium matured in the following November. Matthews' contract provided that, "in the event of this agreement being terminated by any cause, all the interest of the agent in any future premium or premiums that may accrue on the business secured hereunder shall cease and determine at the date of such termination." Obviously, the unpaid portion of the premium on the bond executed and in force was not a premium which might "accrue" on the same bond in the future. "Accrue" means to grow, increase, augment, additional. Hence the provision has reference to premiums to accrue in the future as distinguished from those which have accrued, as we hold the premium in controversy did when the bond was written under the circumstances stated.

[3, 4] We next consider the contention of Blanton, Thomas & Co. that they were entitled to an instructed verdict against American Surety Company, which the court refused, and which refusal is assigned as error. If Blanton, Thomas & Co. are entitled to recover from the American Surety Company at all, it is upon the evidence of Blanton that the American Surety Company independently agreed to pay them the commission, for Blanton, Thomas & Co. can base no right to recover on the fact that they wrote to and secured from state agent, and in turn delivered to the bank, the continuation certificate. The certificate was not necessary to continue the liability of the American Surety Company on the bond, and was in fact executed under the belief that the bond was for one year only. Reverting then to the agreement of the American Surety Company to pay Blanton, Thomas & Co. the commission, we conclude the evidence fails to raise any issue in that respect, and that the court properly instructed verdict against Blanton, Thomas & Co. The evidence clearly discloses that Lucy, the state agent, was not

making an independent promise to Blanton, Thomas & Co. of the commission in any event, but only stating his construction of the controversy, and who in his opinion was entitled to the commission. Blanton's testimony means no more than that Lucy was of opinion that the commissions on the unpaid premium, with which Blanton had nothing originally to do under Lucy's construction of the facts and the contract, belonged to Blanton, Thomas & Co., or that they were entitled to it, and that the company, because they were entitled to it, would pay it.

[5] Even had the general agent unequivacally promised to pay it, the company would not be bound by such promise, if, under all the facts, it was bound to another, since the promise would be without consideration. We have held, and do hold, that under all the facts the American Surety Company was at all times bound to Sheerin for the commission, and hence never bound to Blanton, Thomas & Co.

It is also contended that the court erred in not directing verdict for Blanton, Thomas & Co. for $125, being the amount that Matthews was entitled to as commissions on the second premium installment, or at least erred in not submitting that issue to the jury. As we have already indicated, Blanton, Thomas & Co. did not succeed to any interest in the unpaid premium, either as against Matthews, as a result of his contract with American Surety Company, or against American Surety Company, as result of its contract with said company. Accordingly there was no error in refusing the charge.

Complaint is made of the exclusion of certain letters written by the American Surety Company's general agent to Blanton, Thomas & Co. after they became local agents of the American Surety Company. One of these letters tends to show that, in the opinion of the general agent, the local agents, Blanton, Thomas & Co., are entitled to a commission on the second installment of the premium on the bank bond, and one the amount thereof. As indicated, there never was a time when Blanton, Thomas & Co. were entitled to any interest in the commissions to be paid upon the bank bond. That matter was concluded and the right of the parties vested and arose as matter of law before the letters were written, and long before Blanton, Thomas & Co. became the local agents, and the right of the parties is determinable, not by the opinions and agreements of adverse claimants subsequent thereto, but by the facts in existence at the time the matter accrued. That feature we have already discussed. There was no error in excluding the letters.

[6] Complaint is made that the judgment does not conform to the verdict. The court directed verdict in favor of American Surety Company against Blanton, Thomas & Co. as a partnership, and against J. W. Blanton, John M. Thomas, Geo. M. Easley, and L. F. Boulware, the individual members thereof, personally. Judgment followed the verdict, save that it was in favor of Boulware on the recited ground that it appeared that he had not been served with citation. Since the verdict of the jury was instructed, we conclude that no province of the jury was invaded by the action of the court. If the court was authorized to direct verdict, and in so doing he directed verdict against one not served with citation, he was equally authorized to set it aside as to such person. Instructed verdicts are, in effect, judgments of the court. It is well settled that judgments may be so corrected. Frerich v. Hering, 147 S. W. 1164, and cases cited.

Finding no reversible error in the record, the judgment is affirmed.

Affirmed.