JORIS A. RAMSETH v. CITY AGENCY, INC., AND ANOTHER.

118 N. W. (2d) 219.

November 9, 1962—No. 38,488.

*William J. Nierengarten,* for appellants.
*Hugh V. Plunkett, Jr.,* for respondent.

OTIS, JUSTICE.

The plaintiff, Joris A. Ramseth, brings this action to recover damages for the wrongful refusal of defendant, A. O. Greene, to surrender certain daily reports and other records concerning insurance policies

148

which plaintiff claims belonged to him as a result of a brokerage contract with defendant. (City Agency, Inc., was also named as defendant but for the purposes of this opinion it is considered one and the same as the individual defendant.) By way of counterclaim defendant alleges there is due him the sum of $1,902.91 in brokerage fees. The case was tried by the court without a jury and defendant appeals from an order denying his motion for amended findings or a new trial, and from a judgment awarding plaintiff the sum of $500 and denying defendant recovery on his counterclaim.

The facts are not in dispute. For a number of years Ramseth conducted a real estate and insurance business in the city of Austin in office space which he secured from the company Greene operated under the name of "City Agency, Inc.," a general insurance subagency representing Safeguard Insurance Company, through whom most of the policies here in question were written.

On April 14, 1953, plaintiff and defendant entered a written contract, the relevant provisions of which are as follows:

In consideration for Greene furnishing Ramseth office facilities,

"[Ramseth][1] agrees to broker all of his insurance business through [Greene] who would receive five per cent of the premium with respect to all insurance placed through Bureau companies as and for a brokerage fee, and in addition to said usual brokerage fee any excess commissions received by [Greene] under agency contracts with Bureau or Non-Bureau companies or excess commissions which may be paid by companies irrespective of agency contracts.

"[Ramseth] shall have the right to place his personal sticker on all of his policies, or sign same as agent if he desires to do so, and it is clearly understood and agreed by [Greene] that all insurance policies which [Ramseth] has heretofore brokered with [Greene], or may hereafter broker with [Greene], belong to and are owned by [Ramseth] and that [Ramseth] may at his option remove said policies from [Greene's] insurance agency at any time.

\* \* \* \* \*

[1]The names of the parties have been substituted for "first party" and "second party."

"[Greene] agrees to service [Ramseth's] insurance policies so long as they are brokered through [Greene] pursuant to the terms hereof."

After a falling out, Ramseth canceled the contract effective June 1, 1960, and demanded that Greene surrender all of the daily reports and other records of policies then in force which belonged to Ramseth. This Greene refused to do.

At the beginning of trial, the parties entered the following stipulation:

"* * * it is stipulated by and between the parties in open court through their respective attorneys that plaintiff was entitled to the daily records with respect to his insurance business that was being brokered through the defendants upon termination of the brokerage contract, and that defendants failed to turn over the daily records to the plaintiff, or to attempt to make any effort to have them turned over; * * *.

* * * * *

"* * * It is further stipulated that the measure of damages of the defendants on their counter claim is the sum of $2378.67.

* * * * *

"* * * Which sum would have been payable over a period of two years from June 1, 1960 in equal annual installments, * * *.

* * * * *

"* * * It is further stipulated that service of these policies during the two year period referred to would involve twenty percent of the total sum claimed * * *. It is further stipulated that plaintiff waives his claim to have such amount further reduced by reason of the possibility of cancellations of some of these policies in question during the two year period. It is further stipulated that the measure of damages of the plaintiff, under plaintiff's second cause of action, is the sum of $500.00, so that no evidence need be submitted to the Court on the issue of the amount of plaintiff's damages under this second cause of action."

1. The court found that there was no justification for Greene's refusing to surrender the insurance records and ordered judgment for Ramseth for $500. In the light of the parties' stipulation, it is difficult

to see what other course the court could have pursued. Defendant now complains that Ramseth had a duty to mitigate his damages by consulting the daily records under defendant's surveillance when they were needed, but we believe the court was clearly justified in giving effect to the stipulation which conceded that plaintiff was entitled to the records and acknowledged that the measure of damages was $500. In the face of this agreement the court had no choice but to enter a finding for $500 in plaintiff's favor.

2. A more difficult question concerns Greene's right to receive 5 percent of the premiums paid after June 1, 1960, when his contract with Ramseth was terminated, on policies previously written but which continued in effect and permitted payment in annual installments for one or more years. The trial court held that Greene's right to 5 percent of the premiums was inseparable from his obligation to service the insurance policies. This duty involved collecting premiums, attaching mortgage and change of interest endorsements, and processing claims. However, the parties have stipulated that the reasonable value and cost to Greene of this service was 20 percent of the premiums, and have arrived at a figure of $1,902.91 which reflects Greene's savings in being spared those chores.

No authority precisely in point has come to the court's attention but we are satisfied from a reading of the contract and on the basis of analogous precedent that the parties intended Greene to receive his 5 percent on premiums earned on all policies issued while this agreement was in effect, whether paid before or after their contract terminated. The contract provides that Greene shall "receive five per cent of the premium with respect to *all* insurance" which Ramseth brokered through Greene.

Plaintiff argues that the question is governed by the rule applying to renewal premiums claimed by an agent against an insurer. Ordinarily the agent is denied renewal commissions by the express terms of his contract.[2] However, even if the contract is silent, where the agency

---

[2] Jacobson v. Connecticut Mutual Life Ins. Co. 61 Minn. 330, 63 N. W. 740; Bone v. New York Life Ins. Co. 165 Minn. 327, 206 N. W. 452; Wicker v. Modern Life Ins. Co. 194 Minn. 447, 261 N. W. 441.

is properly terminated, it is the general rule that the agent is not thereafter entitled to renewal commissions because he has done nothing to keep the policies in force after their normal expiration.[3]

Here, however, Greene had performed all of the services which his contract required, except those as to which the parties have expressly reached an accord and which have been reduced to an agreed figure. When the contract was terminated, the only premiums unpaid and subject to commissions were those on policies which were fully executed and on which Greene would have been entitled to his 5 percent if paid in a lump sum instead of in installments arranged for the convenience of the policyholders. Certainly Greene could not be deprived of his commissions on single premium prepaid policies by the unilateral cancellation of the contract between the time the policy was processed and the time the premium was paid. If Ramseth's theory is sound he would even be entitled to a pro rata rebate of all premiums paid before June 1, 1960, to reflect the unexpired terms after that date, a patent absurdity.

Nor is there any merit in the contention that unpaid installments cannot be determined until the possibility of future cancellations has been resolved. The plaintiff has expressly waived his right to consider this contingency by the terms of his stipulation.

Bearing in mind that we are dealing with a brokerage contract between an insurance subagent (Greene) and an independent salesman (Ramseth), who do not have the usual relationship of an insurance company and its general agents, still we believe the cases discussing the conventional agency arrangements are by analogy persuasive.

A controversy presenting problems parallel to those raised in the instant case was decided by the Michigan court in L. A. Walden & Co. v. Consolidated Underwriters, 316 Mich. 341, 25 N. W. (2d) 248. There the insurance agent had written workmen's compensation policies

---

[3]Professional & Business Men's Life Ins. Co. v. Salisbury (10 Cir.) 238 F. (2d) 278; Fabian v. Provident Life & Acc. Ins. Co. (D. Minn.) 5 F. Supp. 806, 808; 26 Minn. L. Rev. 556; Annotation, 163 A. L. R. 1470; Locher v. New York Life Ins. Co. 200 Mo. App. 659, 673, 208 S. W. 862, 866; 29 Am. Jur., Insurance, § 177; 44 C. J. S., Insurance, § 162, note 75.

and collected two-thirds of the annual premium in monthly installments. The precise amount of the premiums could not be established until a year-end audit determined adjustments based on the actual number of employees covered and the amount of their wages. The compensation carrier terminated its agency agreement and a dispute arose over the agent's right to commissions on policies then in effect but not fully paid up. The court said (316 Mich. 347, 25 N. W. [2d] 250): "Unless the contract clearly so provides, we should not conclude that there must now be a forfeiture of plaintiffs' commissions fully earned." The rule governing life insurance renewals was held inapplicable. In deciding that the agent was entitled to a commission on the balance of unpaid premiums, the court stated (316 Mich. 349, 25 N. W. [2d] 251):

"In this case, the fact that defendants extended monthly credit to the insured did not reduce the period of a policy to any less term than one year, or require any further act on the part of plaintiffs to earn the commission.

"The foregoing conclusion answers defendants' claim that the termination of the agency contract ended plaintiffs' rights to commissions on premiums then unpaid, regardless of the length of time the policies had to run thereafter. Defendants terminated the agency agreement on January 15, 1943, as they had the right to do under paragraph 6 of the contract hereinbefore quoted. However, such termination did not end plaintiffs' right to commissions on premiums earned by plaintiffs and later collected by the defendants, on policies issued during the life of the agreement."[4]

No authority reaching a contrary conclusion has been called to our attention. Since the parties by their stipulation have made the contract a divisible one in specifying the value of Greene's unperformed services, we are of the opinion that Greene has earned a commission on an-

[4]See, also, Stevenson v. Brotherhoods Mutual Benefit, 317 Mich. 575, 27 N. W. (2d) 104; American Surety Co. v. Sheerin (Tex. Civ. App.) 203 S. W. 1120; Christensen v. Prudential Ins. Co. (Mo. App.) 204 S. W. (2d) 459; Schlesinger v. Star Ins. Co. 100 Pa. Super. 584; Clausen v. Title Guaranty & Surety Co. 168 App. Div. 569, 153 N. Y. S. 835.

nual premiums unpaid on the date of termination, covering policies which had previously been processed, were in effect on June 1, 1960, and extended for a term exceeding one year.

With a credit to plaintiff of 20 percent for unperformed future services and $500 for wrongfully withholding his insurance records, Greene is therefore entitled to judgment in the sum of $1,402.91.

Reversed and remanded.