## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### MARCH TERM, 1903.

---

*(Continued from Volume 99.)*

## WILLIAM J. KING, Appellant, v. JOHN J. RALEIGH, Respondent.

### St. Louis Court of Appeals, October 21, 1902.

**Insurance, Life:** CONTRACT BETWEEN COMPANY AND AGENT: RENEWAL PREMIUMS: CONSTRUCTION OF CONTRACT AS TO. A contract by which the defendant employed the plaintiff as an insurance agent contains these clauses: "First. The said J. J. Raleigh agrees to allow the said party of the second part, during the continuance of his agency under this contract, commissions at the following rates upon premiums paid to said J. J. Raleigh for said company upon business done by the party of the second part, or upon business done by subagents hereafter appointed by the party of the second part; the same to be in full of claim upon said company or said J. J. Raleigh on account of services as such agent: Upon ordinary life policies seventy per cent of the premiums of the first year, when collected by said agent, five per cent for five years. Second. This contract may be terminated by thirty days' notice by either party." Plaintiff resigned about two years after making the contract, and brought suit to recover a commission on premiums which accrued after he resigned on policies written by him before he resigned. *Held,* that by virtue of the contract he was not entitled to recover, since his right to premiums existed only so long as he continued to be the agent of the company.

King v. Raleigh.

Appeal from St. Louis Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

*Everett W. Pattison* and *Percy Werner* for appellant.

(1) The contract provides for compensation by way of fixed allowance, "during his continuance as agent under this contract," in the shape of commissions on the first premium and on the next five subsequent renewals on all business written by plaintiff. The termination of the contract did not involve loss of commissions on renewal premiums already earned and allowed. Spaulding v. Life Ins. Co., 61 Me. 322; Hale v. Ins Co., 46 Hun 294. (2) Every canon of construction leads to this interpretation of the contract. The cardinal principle of construction is that common sense and good faith are the leading characteristics of all interpretation. Fenton v. Perkins, 3 Mo. 23; Bank v. Haywood, 63 Mo. App. 550. (3) A contract should be so interpreted as not to give an unfair advantage to one of the parties to it over the other. McManus v. Fair Shoe & Clothing Co., 60 Mo. App. 216. (4) Courts will look at all the circumstances, the occupation and relation of the parties, the subject-matter, the usages of the business, and ascertain by reasonable inferences what the parties must have understood and mutually expected. (5) The language of a contract is to be construed against the person drawing it, and if he desires to make a payment conditional he must do so distinctly and unmistakably, otherwise it is to be taken as absolute. *Verba fortius accipiuntur contra proferentem.* Shine's Admr. v. Bank, 70 Mo. 524; Hurley v. F. & D. Co., 68 S. W. 958; Nordyke & Morman Co. v. Kehler, 155 Mo. 656. (6) The contract is an entirety and the party seeking to recover not only may, but must, include in his action all damages in suing for a breach thereof.

Lewis v. Ins. Co., 61 Mo. 539; Aetna Ins. Co. v. Nesen, 84 Ind. 348; Ensworth v. Life Ins. Co., 1 Flip. 92; Wells v. Life Assn., 99 Fed. 222; Stagg v. Ins. Co., 10 Wall. 589; Ins. Co. v. Williams, 91 N. C. 69; Jacobson v. Life Ins. Co., 61 Minn. 330.

*Alphonso Howe* for respondent.

(1)    This case presents the novelty of being a suit on a contract, which, according to the allegations of the petition and the proof adduced, was terminated by mutual consent, at the instance of appellant, long prior to the institution of this suit. It was, therefore, at the time of the institution of this suit, according to the logic and reason of the situation, a dead contract, it having been terminated *in toto* without reservation. The record in this case does not show a resurrection of this contract, and, as it is nowhere shown that the breath of life was ever breathed into it after its termination by revival or otherwise, we are constrained to believe that it is still dead, and can not form the basis of a suit. (2)    One of the rules of law is that there should be interpretation of contracts only where it is needed; that is, where the meaning is in doubt. The general rule of interpretation of contracts is the intention of the parties, and it is the duty of the court to construe it according to its terms. Bishop on Contracts, secs. 379, 380; Thornton v. Royce, 56 Mo. App. 179; Conrad v. DeMontcourt, 138 Mo. 311. The court is not concerned with the virtues of contracts, as being partial to either party. The bargain made, as evidenced by the contract, is the one the court enforces. Courts do not make new contracts for parties.

GOODE, J.—Raleigh, the defendant, is the agent of the John Hancock Mutual Life Insurance Company for the State of Missouri, and on the seventh day of April, 1898, he made a written contract with the plaintiff, King, by which he appointed King agent "with

authority to procure applications for policies of insurance upon the lives of individuals and collect premiums in accordance with the rules of said company."

Other clauses of the contract material to the case before us are:

*First.* "The said J. J. Raleigh agrees to allow the said party of the second part, *during the continuance of his agency under this contract,* commissions at the following rates upon premiums paid to J. J. Raleigh for said company upon business done by the party of the second part, or upon business done by subagents hereafter appointed by the party of the second part, the same to be in full of claim upon said company, or said J. J. Raleigh on account of services as such agent; upon ordinary life policies, seventy per cent of the premiums of the first year when collected by said agent; and on the subsequent premiums when collected by said agent, five per cent for five years."

Then follows a schedule of rates on other policies than ordinary life policies:

*Second.* "This contract may be terminated by thirty days' notice by either party."

King wrote insurance under his contract until the first day of November, 1900, when he resigned and his resignation was accepted by Raleigh.

The decision of this controversy turns on the construction to be given to the clause of the contract providing for the compensation to King; which he contends should be interpreted to mean that he was entitled to a commission on premiums paid on policies written by him, for five years subsequent to their dates, regardless of whether he continued to be agent for the John Hancock Company or not; while Raleigh says its meaning is that he should only receive a commission on such premiums as were collected during the term of his agency.

If we are to be bound by the very words of the contract, King would be entitled to no premiums, whether collected during his agency or subsequent to it, unless

they were collected by himself; but the undisputed testimony shows that in no case did King collect premiums, which were all paid to the principal, Raleigh, who sent out notices to policy-holders prior to the dates when premiums would fall due, of their impending maturity and directed the policy-holders to make all checks payable to J. J. Raleigh, State Agent; so the parties construed the contract in this regard, to entitle King to premiums on his policies when collected by Raleigh, and no point is made against King's right to recover by respondent's counsel on the theory that King must have made collections in person to get commissions.

Respondent's argument is, that the clause of the contract first quoted, defeats plaintiff's claim, because Raleigh therein agreed to allow him commissions only during his continuance as agent, and the agency having terminated, his right to commissions thereafter accruing likewise terminated.

It is to be observed that the fact of King's resignation cuts no figure in the decision of this question, because either party had the right to terminate the contract on thirty days' notice and his posture is as good as it would have been if Raleigh had dismissed him, and the latter's posture is no better than it would have been if he had dismissed King; therefore, the interpretation invoked by the respondent and adopted by the circuit court would permit this hardship: King might have worked for the company for four years or more and have written many policies whose premiums he was interested in for five years, and Raleigh could then have discharged him and cut off his interest in those premiums; and this view inclined us at first against the respondent's position; but an examination of the cases has since shown us it is supported by authorities of controlling weight. Stagg v. Ins. Co., 10 Wall. 589; Ins. Co. v. Williams, 91 N. C. 69; Jacobson v. Conn. Mut. Life Ins. Co., 61 Minn. 330; Ins. Co. v. Holloway, 51 Conn. 310; Spaulding v. Ins. Co., 61 Maine 330;

Trimble v. Conn. Mut. Life Ins. Co., 13 Wkly. Law Bul. 109, 22 Id. 37, a case afterwards affirmed by the Supreme Court of Ohio, but not reported.

In Stagg v. Ins. Co., supra, the clause of the contract between the agent and the insurance company, construed by the Supreme Court of the United States, was:

·"For your services as above, you will be allowed a commission of ten per cent on the first premiums (cash and notes) and five per cent on all subsequent renewal premiums, *so long as you continue the agent of the company.*"

Stagg procured policies under the contract for fifteen years when he was discharged by the company, and thereupon brought suit claiming some three thousand dollars as five per cent commission on the renewal premiums of policies originally made by him as agent, the premiums having been received by the company after his discharge; and it was ruled that the company had the right to discharge him at its discretion and he could not recover for any premiums which accrued after the termination of his agency.

In Jacobson v. Conn. Mut. Life Ins. Co., supra, the clause of the contract with regard to compensation provided that the agent should receive a commission of twenty-five per cent on the first premium paid on any policy he wrote, and ten per cent on each of the next four renewal premiums so long as he should continue as agent. He was dismissed from the company's employ and sued afterwards for an interest in the renewal premiums.

The opinion says:

"Under the express terms of the contract before it was modified, the plaintiff was to continue in the employment of the defendant only during the pleasure of its board of directors, and he was to be paid the stipulated commissions so long only as he continued to be such general agent, and was to receive the commis-

sion on four succeeding renewal premiums 'unless his agency be sooner terminated.' This would seem to leave no room for discussion and construction. It was clearly the intention of the parties under this original contract that all right to compensation and commissions on the part of the plaintiff should cease whenever his agency should terminate for any cause.''

The courts in construing agreements like the one we have before us, proceed on the notion that the compensation to be received by the agent from year to year through commissions on renewal premiums, is associated with the continuance of his agency and is partly earned by services subsequent to the procurement of the risk, not solely by its procurement; the purpose being to bind him to steady work in behalf of the company. Such an agreement looks one-sided and the hardship of the construction has not passed unnoticed; but the courts have felt unable to disregard the language employed merely because it might work injustice; for contracts must be enforced as made, not remodeled to render them just. Strong dissents have been filed in some cases, nor is there a total absence of authority the other way. Burelson v. Northwestern Mut. Life Ins. Co., 86 Calif. 342.

While we feel a doubt as to whether the contract between Raleigh and King was unsusceptible of the interpretation put on it by the latter's counsel, we are constrained by the decisions to adopt the other view.

The judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.