# W. HORACE LOCHER, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, a corporation, Respondent.

St. Louis Court of Appeals. Argued and Submitted January 7, 1919. Opinion Filed February 4, 1919.

1. **CONTRACTS: Insurance: Employment of Insurance Agent: Termination of Contract: Grounds.** Where an insurance agent specifically contracted to act exclusively as agent for his principal and as such agent devote his entire time, talents and energy to the business of the agency, and it appears that he not only had not acted exclusively as the agent for the principal but had actually entered into the employment of a rival company while his contract was in force and for which he was discharged, *held* that it was within the power of the principal to terminate the agency of the agent when it did, and for the cause which it did.

2. ———: ———: **Right of Agent to Commissions on Renewals: Vested Rights.** Unless it is expressly stipulated, or clearly to be gathered by the contract, or the agent's right to commissions on renewals is to continue on renewals falling in after the term of his employment, he is not entitled commissions on renewals received or falling in after the expiration of his agency; under the contract in question, the agent has acquired no interest in renewals on policies written by him which became vested at the time of the writing of the policy.

3. ———: ———: ———: **Based on Contract.** The right of an agent to commissions on renewals collected or falling in after the end of his agency, can rest only on expressed terms in his contract or be necessarily drawn from an interpretation of that contract as a whole; for the right to commissions on renewals rests, in part, on the consideration of the services by the agent to the principal in keeping the policies written by him alive.

4. ———: ———: ———: **Construction of Contract.** Where the contract of employment does not, expressly or by necessary implication, provide for continuing commissions to the agent on renewals collected or falling in after the end of the agent's employment, the agent is not entitled to a commission on renewals on policies written by him when such renewals were collected after the termination of his employment.

5. **APPELLATE PRACTICE: Reversals.** Even though errors were committed by the court below, the appellate court will not reverse a judgment and remand a cause where in no event could plaintiff recover.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Thomas L. Anderson,* Judge.

AFFIRMED.

*B. H. Charles* for appellant.

(1)    The judgment was not responsive to the
pleadings; nor did it dispose of the issues made by
the pleadings. Ervin v. Chiles, 28 Mo. 576; Black v.
Early, 208 Mo. 313; Kansas. City v. Woershoeffer, 249
Mo. 26. The court's judgment in favor of defendant is
at variance with the defendant's own theory, as pleaded
in the answer. The judgment cannot stand because
issues of fact raised by the pleadings are not disposed
of. (2) Substantially the very same clauses (20 and 22)
of the contract of 1898 which the trial court construed
in favor of the defendant in the case at bar have been
construed by the court of last resort in defendant's
home State in favor of plaintiff. Heyn v. N. Y. Life
Ins. Co., 192 N. Y. 1, reversing Heyn v. N. Y. Life
Ins. Co., 118 App. Div. 194. See, also: Insurance Co.
v. Coleman, 118 Tenn. 215; Hercules Mutual Life Ins.
Co. v. Brinker, 77 N. Y. 435; Hale v. Brooklyn Life Ins.
Co., 46 Hun. 274, affirmed in 120 N. Y. 294. (a) "The
rule generally applicable to such cases is . . . that
in the absence of any stipulation or agreement limiting
the agent's commissions to premiums received by the
company during the continuance of his agency, he is
entitled to renewal commissions after the termination
of his agency, upon policies written during its continu-
ance." Heyn v. N. Y. Life Ins. Co., 118 App. Div. (N.
Y.) 194; Hale v. Brooklyn Life Ins. Co., 46 Hun. 274,
affirmed 120 N. Y. 294; Hercules Mutual Life, Etc., Co.
v. Brinker, 77 N. Y. 435. (b)    Defendant's present
construction of the contract is harsh and unjust. Heyn
v. N. Y. Life Ins. Co., 192 N. Y. 17; Gillet v. Martin,
160 N. Y. 594, 557; Insurance Co. v. Coleman, 118 Tenn.
215, 233. "Courts will not give a contract such a
construction as will permit one party to secure an
unreasonable advantage over another, unless compelled

to do so by the language of the contract." Zinc and Lead Co. v. Insurance Co., 152 Mo. App. 342; 2 Elliott on Contracts, sec. 1521, p. 798. (c) Defendant had no right, under the contract, to terminate the agency. Plaintiff was wrongfully dismissed from his agency solely because he was about to engage in procuring policies for another company, although there was nothing in the contract which forbade his so doing. Under such circumstances he is entitled to his renewal commissions. Ensworth v. N. Y. Life Ins. Co., 1 Flippin 92, Fed. Cas. 4496. (d) A forfeiture of plaintiff's rights under the contract was provided for in other clauses of the contract (5 and 15) for certain causes there specifically set out, which, however, do not include the reason assigned by defendant. "This would itself, under the rule '*Expressio unius exclusio ulterius,*' preclude a forfeiture on any other ground." Ins. Co. v. Coleman, 118 Tenn. 233; 2 Elliott on Contracts, sec. 1533, p. 815, citing numerous cases. (e) Where renewal commissions are regarded, by the contract, in the light of part compensation to the agent for his services in obtaining policies for the company, and thereby building up its business, the company has no right by a discharge of the agent "to forfeit and take to itself his earnings, stored up in the renewals." Ins. Co. v. Coleman, 118 Tenn. 233. Plaintiff's renewal commissions were a part of his compensation, already earned, for procuring the business. (3) "If the construction of a contract be doubtful, the practical construction given it by both parties shall control its interpretation." Washington Life Ins. Co. v. Reinholdt, 142 S. W. 596, 603; 2 Elliott on Contracts, sec. 1537, 8 pp. 821-826; Tetley v. McElmurry, 201 Mo. 382; Laclede Construction Co. v. Moss, 185 Mo. 73; Williams v. Railway, 85 Mo. App. 103, 110; Welsh v. Mischke, 154 Mo. App. 728; Coleman v. Ford Motor Co., 195 Mo. App. 562. (a) If there is any uncertainty or ambiguity in the contract it will be construed most strongly against the party using the language, since he is considered as having chosen the language thereof.

This is "particularly applicable to insurance contracts." 2 Elliott on Contracts, sec. 1528, pp. 807, 808, citing numerous cases, including Zinc. etc., Co. v. Insurance Co., 152 Mo. App. 332. (4) The phrase, in 22 ("subject to," etc.), should be construed as applicable to the next preceding clause only. Heyn v. N. Y. Life Ins. Co., 192 N. Y. 1. If the phrase in 22 ("subject to," etc.) is made to move back, and over the next preceding intervening clause, then all the terms and conditions of clause 20 are read into clause 22. This leads to an absurdity. (5) Forfeitures are abhorred, not favored; and courts will enforce them only when the provisions of the contract strictly construed call for a forfeiture. Tetley v. McElmurry, 201 Mo. 382, 394. Forfeitures "should be strictly construed and never helped out by implication." Tetley v. McElmurry, 201 Mo. 394, citing numerous Missouri cases. (6) Where there is a written contract any subsequent modification thereof, made without consideration, is void. Gifford v. Williams, 187 Mo. App. 29, 37; Wilt v. Hammond, 179 Mo. App. 406, 513. Especially is this true where the modification is arbitrarily dictated, as in this case, by the party for whose benefit alone it is made.

*Jones, Hocker, Sullivan & Angert, Vincent L. Boisaubin,* and *James C. Jones, Jr.,* for respondent.

(1) Where the contract of agency provides for the payment to the agent of renewal commissions on premiums paid during his continuance as agent for the defendant, the agent is not entitled to renewal commissions on premiums paid subsequent to the termination of his agency. King v. Raleigh, 100 Mo. App. 1; Heyn v. New York Life Ins. Co., 118 App. Div. 195; Sutherland v. Connecticut Mutual Life Ins. Co., 149 N. Y. Supp. 710; Aldrich v. New York Life Ins. Co., 121 App. Div. 18; Chase v. New York Life Ins. Co., 188 Mass. 271; Dodson v. New York Life Ins. Co., 36 Super. Ct. 551; Butler v. New York Life Ins. Co., 45 Wash. 141; Stagg v. Insurance Co., 10 Wall. 589; Nellis v. McFarland, 9 Cal. App. 535; Jacobs v. Connecticut

Mutual Life Ins. Co., 61 Minn. 330; Fass v. Atlantic
Life Ins. Co., 89 S. E. 558. (2) (a) Where there is
no definite term to the agency it is terminable at will.
Staroske v. Pulitzer Pub. Co., 235 Mo. 67, 77; Martin v.
New York Life Insurance Co., 148 N. Y. 117; Aldrich v.
New York Life Ins. Co., 121 App. Div. 18. (b) Where
the agency is terminable at will, the agent is not
entitled to renewal commissions on premiums paid
subsequent to the termination of his agency. Scott v.
Travelers Ins. Co., 103 Md. 69, 63 Atl. 380; North
Carolina Ins. Co. v. Williams, 91 N. C. 637; Security
Mutual Life Ins. Co. v. McCray, 186 S. W. 819;
Fidelity & Deposit Co. v. Washington Life Ins. Co.,
193 Fed. 512; Ballard v. Travelers Insurance Co., 119
N. C. 187, 25 S. E. 956; Mills v. Union Central Life
Insurance Co., 77 Miss. 327, 28 South. 954; Fass v.
Atlantic Life Insurance Co., 89 S. E. 558; Burleson v.
Northwestern Mutual Life Ins. Co., 86 Cal. 342, 24
Pac. 1064; Phoenix Mutual Life Ins. Co. v. Holloway,
51 Conn. 310, 314. (c) The agent has no vested
interest or property right in renewal commissions
provided for by his contract of agency. King v. Raleigh,
100 Mo. App. 1; Arensmeyer v. Insurance Co., 254 Mo.
363, 380; Fass v. Atlantic Life Ins. Co., 89 S. E. 558;
North Carolina State Life Ins. Co. v. Williams, 91 N.
C. 637; Ballard v. Travelers Insurance Co., 119 N. C.
187, 25 S. E. 956; Stier v. Imperial Life Ins. Co., 58
Fed. 843; Scott v. Travelers Insurance Co., 103 Md.
69, 63 Atl. 380.

STATEMENT—Action by plaintiff to recover com-
missions on renewals on policies written by him while
in the employ of defendant but renewals thereon
collected by the defendant after the termination of the
employment of plaintiff. It is averred that his com-
missions on all renewals of policies secured by him
while he was with the company, and which had been
paid to the company during his connection with it, had
been paid him, but that those renewals collected by
the company on such policies after the termination of

his employment had not been paid him 'and were due, amounting, as he originally claimed, to $3596.90. During the trial of the cause, however, it was in evidence and agreed, that the amount of the renewals collected on such policies after the termination of plaintiff's employment amounted to $3155.69, it being claimed by plaintiff that to this was to be added interest to the amount of $573.57. In his petition plaintiff had claimed that he had not sufficient knowledge or information to know or to exactly state the full amount due him under the contract and asked the court that the defendant be ordered to account for all of the renewal commissions and each and all of them. But by the agreement reached at the trial, as above stated, the necessity for this was obviated, it being agreed that if plaintiff recovered, he would be entitled to $3155.69, plus interest, a total of $3729.26.

The answer, after a general denial, pleaded a modification of the original contract in certain respects, as also various other affirmative defenses, which in view of the outcome of the trial, it is not necessary to set out. This answer was met by a general denial by way of reply.

At the conclusion of the introduction of evidence on the part of plaintiff, the court, at the request of the defendant, instructed the jury that under the pleadings and law and evidence in the case plaintiff could not recover and their verdict should be for defendant. This was objected to, exception saved by plaintiff; the jury rendering a verdict in accordance with the direction of the court and judgment following in favor of defendant, plaintiff has duly appealed.

Plaintiff gave in evidence by way of an exhibit, the list of the policies he had written during the period of his employment, and, as before herein set out, the amounts due him on renewals, if he was entitled to them, was agreed upon. He also introduced in evidence correspondence between him and the defendant as also transactions between him and the representatives of the defendant, from all of which it appeared that the

original contract of employment, which was dated January 25, 1898, and covered the period from that date to January 31, 1899, had been extended from year to year until his discharge in November, 1911. This contract provided that the defendant, party of the first part, appoints the plaintiff, party of the second part, as its agent for the purpose of canvassing for applications for insurance on the lives of individuals, defines his powers as agent, puts limitations on them, and assigns as the territory in which he is to operate, the city of St. Louis, Missouri. Among other things it was agreed that the party of the second part, plaintiff, "shall act exclusively as agent for said party of the first part, and as such agent shall devote his entire time, talents and energies to the business of the agency hereby established, and in the conducting of it shall be governed strictly by the instructions which he may receive from time to time, from said party of the first part."

The material sections of the contract upon which this controversy turns are these:

First: Section 20.

"It is agreed that said party of the second part shall be allowed, under this agreement, the following compensation only, unless otherwise expressly stipulated in writing, namely, a commission on the original or renewal cash premiums which shall, during his continuance as said agent of said party of the first part, be obtained, collected, paid to and received by said party of the first part up to and including the first year of assurance (should his agency continue so long) on policies of insurance effected with said party of the first part, by or through said party of the second part, which commission shall be at and after the following rates."

Following this is a table under the headings, "On the original cash premiums for the first year of assurance," and "Accumulation Period," and enumerates eight different forms of policies running for fifteen or twenty years, with the commissions plaintiff

is to receive on the several forms, the commissions running from twenty-five to thirty-five per cent. These are lettered from A to I inclusive. A final one (1) provides:

"On all other plans of policies (excluding annuities) paid by more than five annual premiums, a single and only brokerage commission of thirty per cent."

By section twenty-one it is agreed that in addition to the compensation specified in section 20, "subject to all the terms and conditions of said section," the company will allow and pay to plaintiff, "for traveling and other expenses, an extra commission of twenty per cent on the original first year's or parts thereof premiums paid to and received by said party of the first part in cash, in accordance with the terms of this agreement, upon business procured by or through" the plaintiff upon plans of policies designated as classes A, B, C, D, E, F, G and H in section 20.

Second, section 22, which is as follows:

"It is agreed that should the procurements of placed insurance by or through said party of the second part, during the period beginning January 25, 1898, and ending January 31, 1899, amount to one hundred thousand dollars ($100,000), or more, the annual premiums on which shall have been paid to and received by said party of the first part in cash in due course during said period, or within sixty days thereafter, on plans of policies designated as Classes A, B, C, D, E, F and G, in section 20 hereof, under the terms and conditions of this agreement, said party of the second part shall be entitled to a commission of seven (7) per cent. on such premiums of business written during said period, on plans of policies designated as Classes A, B, C, D, E, F and G, in section 20 hereof, as shall renew for the years of assurance stated below, subject to all the terms and conditions of said section 20, as follows:"

Here follows a list or tabulation of amounts running from $100,000 to $500,000. That for $100,000 reads thus:

"If $100,000 is secured, as above, said commission to be allowed on the renewal premium paid on said business for the second year of assurance."

The like language is used for $150,000 of insurance secured for the second year of assurance; $150,000 for the third year; $200,000 for the fourth year; $250,000 for the fifth year; $300.000 for the sixth year; $350,000 for the seventh year; $400,000 for the eight year; $450,000 for the ninth year, and $500,000 for the tenth year of assurance. It will be noticed that by this section XX 22 the contract was to cover the period from January 25, 1898, to January 31, 1899, when it was then to end. It was renewed from time to time, usually in this form, taking that of February 1, 1899, for example, which, addressed to plaintiff, signed by one of the vice-presidents of defendant, reads:

"Referring to your agreement with this company, dated January 25, 1898, subject to all the terms and conditions of same, it is hereby agreed and understood that the bonus renewal offer provided for by section 22 of your said agreement for the period ending January 31, 1899, is hereby made to you for the year beginning February 1, 1899, and ending January 31, 1900, in accordance with and under the same conditions as specified in said section 22 of your said agreement. In all other respects your contract remains in full force and effect."

Practically the same form of letter was written for each of the following years until 1903, each renewal distinctly stating that the contract was renewed, "subject to all the terms and conditions of" the contract of January 25, 1898, and that it is agreed and understood "that the bonus renewal offer provided for by section 22 of your said agreement for the period ending January 31, 1899, is hereby made to you for the year beginning, . . . in accordance with and under the same conditions as specified in said section 22 of your said agreement. In all other respects your contract remains in full force and effect." In 1903, the extension was made in this form by a letter addressed

to plaintiff and signed by the superintendent of agencies of the defendant, dated January 10, 1903, as follows:

"Referring to your agreement with. this company of January 25, 1898, and subject to all its terms and conditions, it is. agreed, until further notice, that the bonus renewal offer provided for in section 22 of said agreement, is hereby renewed, under the same terms and conditions, from January 1, 1903, for each twelve months' period until December 31st."

All these were accepted in writing by plaintiff and under this letter of January 10, 1903, he seems to have remained in the employ of the company under these various extensions until November 16, 1914, when written notice, signed by its vice-president, was served on plaintiff, notifying him that his. "employment agreement with this company, bearing date January 25, 1898, and all agreements amendatory thereof or supplementary thereto, are hereby terminated on account of your having entered the service of another company."

## OPINION.

REYNOLDS, P. J.—(after stating the facts as above)—The controlling, in fact the only, question involved in this case, arises over the claim of the plaintiff (appellant) to a percentage or commission on renewals received and realized by the defendant corporation after the termination of the agency of plaintiff, who had been such agent in the territory embraced within the city of St. Louis, Missouri, on policies written by him while he was such agent, the renewals falling in and being collected by defendant after the termination of his agency.

The determination of this question turns upon the construction of Sections 20 and XX 22, the latter referred to as section 22.

It is said in 16 Am. & Eng. Ency. of Law (2 Ed.), p. 919, subdivision 2:

"Though the cases leave some ground for doubt, they seem to sanction the rule that a contract providing

for the payment of commissions to the agent on renewal policies confers upon him no right to collect and retain such commissions after the termination of the agency, or to recover them from the company when collected by another agent. The question has generally been determined with reference to the peculiar provisions of the particular contract in question.''

In 22 Cyc., p. 1441, subdivision C, it is said:

''In the absence of express stipulation to the contrary, an agent is not entitled to commissions on renewal premiums paid after the termination of the agency, and the forfeiture of his right thereto is not affected by stipulating in the contract specific grounds of forfeiture, none of which occurred.''

In 14 R. C. L., p. 869, sec. 42, it is said:

''The most important question which arises with reference to the compensation of insurance agents is whether an agent entitled to commissions on renewal premiums is entitled to a commission on such a premium paid after the termination of his agency. Of course where his contract of employment provides that he shall receive a certain commission on renewal premiums so long as he continues to be the agent of the company, he is not entitled to commission on renewals made after his discharge. . . . The right to commissions on renewal premiums terminates at his death, discharge for cause, or resignation, especially where the contract discloses an intent that the right to commissions shall not extend beyond that time.''

The underlying principle back of this holding rests upon the idea or rule that the agent has acquired no interest in renewals on policies written by him which becomes vested at the time of the writing of the policy. This claim was long ago disposed of by the Supreme Court of the United States in Hunt v. Rousmanier's Admrs., 8 Wheat. (U. S.) 174, where Chief Justice MARSHALL says, beginning at page 203:

''If a power be coupled with an 'interest,' it survives the person giving it, and may be executed after his death. As this proposition is laid down too positive-

ly in the books to be controverted, it becomes necessary to inquire what is meant by the expression, 'a power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest,' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases when the interest commences, and, therefore, cannot, in accurate law language, be said to be 'coupled' with it.''

Quoting this definition, which Judge PHILIPS, presiding in the circuit court for the Western District of Missouri, in Stier v. Imperial Life Ins. Co., 58 Fed. 843, has said aptly defines a power coupled with an interest, that learned judge applying it in a case in which an agent claimed a right in renewals, has said (p. 845), that clearly the plaintiff had no such interest in the subject-matter of the contract; that is to say, in the renewals, as would take away the customary option of the principal to terminate the agency.

So the Supreme Court of North Carolina, in Ballard v. Travellers' Ins. Co., 119 N. C. 187, l. c. 191, also citing and quoting the same matter from Hunt v. Rousmanier's Admrs., supra, likewise applied it to commission renewals, holding that the contract did not confer upon the agent a power coupled with an interest.

In the case at bar there can be no pretense that it was not within the power of the respondent, defendant company, here to terminate the agency of the plaintiff

when it did, and for the cause which' it did, for that agent had specifically contracted to "act exclusively as agent for said party of the first part and as such agent shall devote his entire time, talents and energies to the business of the agency hereby established," and it appeared by the evidence in the case that he not only had not acted exclusively as agent for the defendant but had actually entered into the employment of a rival company while his contract with the defendant was in force, and for this he was discharged.

In King v. Raleigh, 100 Mo. App. 1, our court, speaking through Judge GOODE, although acknowledging that in that case it was a matter of hardship toward the plaintiff, which, however, Judge GOODE said had at first inclined our court against the respondent's position in that case, comes to the conclusion that an examination of the cases sustains the position of the respondent that by the contract between him and the appellant, respondent had agreed to allow appellant commissions only during his continuance as agent, and the agency having terminated, his right to commissions thereafter accruing likewise terminated. This, said Judge GOODE, is supported by many authorities which' he cites. After quoting from two of them, namely, Stagg v. Connecticut Mutual Life Ins. Co., 10 Wall. (U. S.) 589, and Jacobson v. Connecticut Mutual Life Ins. Co., 61 Minn. 330, Judge GOODE says (l. c. 7):

"The courts in construing agreements like the one we have before us, proceed on the notion that the compensation to be received by the agent from year to year through commissions on renewal premiums, is associated with the continuance of his agency and is partly earned by services subsequent to the procurement of the risk, not solely by its procurement; the purpose being to bind him to steady work in behalf of the company."

Noting there is strong dissent to this in some decisions, Judge GOODE cites, as one of this class, Burelson v. Northwestern Mut. Life Ins. Co., 86 Calif. 342, but with the concurrence of Judges BLAND and BARCLAY,

holds that the court is constrained by decisions cited to adopt the other view.

In Arensmeyer v. Metropolitan Life Ins. Co., 254 Mo. 363, 162 S. W. 261, our Supreme Court refers to this decision of King v. Raleigh with approval and noticing Judge Goode's citation of Burelson v. Northwestern Mut. Life Ins. Co., supra, says that in citing that case the judge probably had in mind a previous part of the opinion, for, says Mr. Commissioner Blair who wrote the opinion, the last part of the opinion "is squarely in point and in accord" with the conclusion reached by the Supreme Court in Arensmeyer v. Metropolitan Life Ins. Co., supra. That this is true will be found by reference. to Burelson v. Northwestern Mut. Life Ins. Co., 86 Calif. 342. There it is expressly said that undoubtedly by the termination of the original contract, all right of the plaintiff or his assignee to commissions was forfeited "as to any and all business done after the termination of the contract, but we think it was not so as to business already. done, and where commissions had been earned before the contract ceased to exist. Therefore, as to any renewal premiums upon which A. would have been entitled his five and one-half per cent. commissions before and at the time the contract was terminated, or, rather, at the time of any violation of the terms of the contract which authorized, and for and on account of which it was terminated, would have been entitled to recover, subject, however, to any indebtedness on his part to the defendant growing out of his agency under the contract and its subsequent modification."

The decision of our court in King v. Raleigh, supra, is referred to approvingly by Judge Rose, presiding in the United States District Court of Maryland, in Fidelity & Deposit Company of Maryland v. Washington Life. Ins. Company of New York, 193 Fed. 512. Reciting the terms of the contract, Judge Rose says (l. c. 513):

The authorities are overwhelming that such pro- visions, standing. alone, deprive an agent of any

right to commissions on renewal premiums paid after the termination of his agency."

In addition to the authorities cited by Judge Goode, in King v. Raleigh, supra (l. c. 5), and to those which we have here above cited, see Scott v. Travellers' Ins. Co., 103 Md. 69, where it was held, on practically the same kind of contract as here before us, that upon the termination of the contract, the right of the agent to commissions on the renewal premiums ceased, since the provision providing for their payment was operative only so long as the contract was in force and while plaintiff continued as the agent of the company and it was a part of his compensation as such agent. To the same effect is Ballard v. Travellers' Ins. Co., supra.

In Walker v. John Hancock Mutual Life Ins. Co., 80 N. J. L. 342, it is held that the agent, having been discharged under the terms of the contract, was not entitled to damages because the company prevented him from collecting premiums which became due after his discharge. This last case is reported and annotated in 35 L. R. A. (N. S.) 153. In the notes to it, on page 155, a number of cases are cited in which it was held that where the contract provided that the agent should be entitled to renewal commissions only during the continuance of his agency, recovery was denied the agent for commissions on renewals paid the principal after it had terminated the agency. A multitude of authorities are cited in support of this, among others, King v. Raleigh, supra.

So that the decided weight of authority leads to the conclusion that, unless it is expressly stipulated or clearly to be gathered by the contract, the agent's right to commissions on renewals is to continue on renewals falling in after the term of his employment, he is not entitled to commissions on renewals received or falling in after the expiration of his agency. The right of the agent to commissions on renewals collected or falling in after the end of his agency, can rest only on express terms in his contract, or be necessarily drawn

from an interpretation of that contract as a whole. This must be so, for the right to commissions on renewals rests, in part, on the consideration of the services by the agent to the company in keeping the policies written by him alive.

The authorities to the contrary chiefly relied on by learned counsel for the appellant are those of Hercules Mutual Life Assurance Society v. Brinker, 77 N. Y. 435; Heyn v. New York Life Ins. Co., 192 N. Y. 1; Michigan Mutual Life Ins. Co. v. Coleman, 118 Tenn. 215.

We have carefully examined these cases. They are all noted by Mr. Commissioner BLAIR (l. c. 376,) in Arensmeyer v. Metropolitan Life Ins. Co., supra, and disposed of as not fitting the contract in the case then before the court. We think that is the situation here. Furthermore, the only published opinion in Hercules Mutual Life Assurance Co. v. Brinker, supra, is an opinion by the minority of the court, three out of the seven judges, who, Mr. Justice EARL writing the opinion, held that the judgment of the trial court should be affirmed, Mr. Justice EARL, with the concurrence of two of his associates, holding that under the contract before them the defendant was not entitled to the commissions on renewals falling due and collected after the termination of his contract with the company. While it is noted in the report that the Chief Justice and three of his associates concur for a reversal and new trial, it nowhere appears upon what ground the majority took this view, as the opinion of the minority judges covered a number of propositions apart from the one as to the meaning of the contracts. So that case can hardly be quoted as authority one way or the other.

It is true that in Heyn v. New York Life Ins. Co., supra, the judgment of the lower courts, which held that no recovery could be had for renewals falling in after the termination of the agency, was reversed. The contract before those courts is one to which the defendant here was a party but it is not of like tenor, or effect, or form, as the one before us. It was made and entered

into between the parties two years before the contract now before us was entered into. Commenting on the decision of the Court of Appeals in the Heyn Case, supra, the Supreme Court for Erie County, New York, in Sutherland v. Connecticut Mut. Life Ins. Co., 149 N. Y. Supp. 1008, says (l. c. 1014) that the judgment of the lower court was reversed by the Court of Appeals "upon the ground, not that the court below was mistaken in the law, as applied to the contract, as it was assumed to be, but that the contract itself did not limit the commissions to those collected during the term of the employment. It was held that a different clause of the contract furnished the measure of the compensation. There is no suggestion that, if the terms of the contract had limited the commissions to the time that the plaintiff remained in the employment, the court would not have enforced that provision. It simply held that this clause, being left blank as to the term of years, was not complete, and that the clause of the contract in writing controlled. It announced no new principle of law. It simply gave a construction to the contract which took it out of the rule announced in the court below. [See Aldrich v. New York Life Ins. Co., 121 App. Div. 18, 105 N. Y. Supp. 493.]"

In Aldrich v. New York Life Ins. Co., above referred to, the Appellate Division of the Supreme Court of New York held, construing a contract almost identical with the one before us, that, first, there was no definite term to the agency but a hiring at will; that while the referee had found as a fact that the reason given for terminating the agreement was not correct, the court held that that was unimportant as the defendant possessed the right to terminate the agency when it saw fit, and the court said (l. c. 20) that by the contract between the parties it was provided:

"A commission on the original or renewal cash premiums which shall, during his continuance as such agent of said party of the first part, be obtained, collected, paid to and received by said party of the first part up to and including the sixth year of as-

surance (should his agency continue so long) on policies of insurance effected with said party of the first part, by or through said party of the second part, which commission shall be at and after the following terms.''

Citing other provisions, the court concludes:

''The purpose is to forfeit all interest of the plaintiff either accrued or to accure if he disregards any of the provisions contained in these three sections. There is nothing in any of them which pares down the effect of section 21. That provision is the general one regulating the compensation to which he is entitled,. and in unequivocal language cuts it off unqualifiedly with the ending of the agency.''

At page 155, in the notes to Walker v. John Hancock Mutual Life Ins. Co., 35 L: R. A., before referred to, the writer of the notes appears to have taken the same view of the decision of the Court of Appeals in Heyn v. New York Life Ins. Co., supra, as taken by the court in Sutherland v. Connecticut Mut. Life Ins. Co., 149 N. Y. Supp. 1008, l. c. 1014, supra. It was held that his term being blank, the company could not, by terminating his agency, deprive the agent of his right to commissions upon renewal premiums after he had secured sufficient new business to entitle him to such commissions for a certain number of years. So we do not think that the decision of the New York Court of Appeals in the Heyn case is here controlling.

Without going into an analysis of Michigan Mutual Life Ins. Co. v. Coleman, 118 Tenn. 215, we think the contract there involved, in so far as the provisions here germane, is radically different from that before us.

We have set out the two sections, 20 and XX22, in the contract here involved. Section 20 specifically provides that the agent shall be allowed under the agreement ''the following compensation only, unless otherwise expressly stipulated in writing, namely, a commission on the original or renewal cash premiums *which shall, during his continuance as said agent of*

*said party of the first part,* be obtained, collected, paid to and received by the said party of the first part *up to and including the first year of assurance (should his agency continue so long) on policies of insurance effected with said party of the first part, by or through said party of the second part.* "By clause XX 22 it is agreed that "should the procurements of placed insurance by or through said party of the second part, during the period beginning January 25, 1898, and ending January 31, 1899, . . . the annual premiums on which shall have been paid to and received by said party of the first part in cash in due course during said period, or within sixty days thereafter, . . . said party of the second part shall be entitled to a commission of seven per cent. on such premiums of business written during said period, . . . as shall renew for the years of assurance stated below *subject to all the terms and conditions of said section* 20." (Italics ours.)

In the various extensions that were made from year to year of the first year's term, it is expressly set out, referring to the first agreement of January 25, 1899, that "subject to all the terms and conditions of same, it is hereby agreed and understood that the bonus renewal offer provided for by section 22 of your said agreement for the period ending January 31, 1899, is hereby made to you for the year beginning February 1, 1899, and ending January 31, 1900, in accordance with and under the same conditions as specified in said section 22 of your said agreement. In all other respects your contract remains in full force and effect."

Section XX22 calls into and makes it "subject to all the terms and conditions" specified in section 20. Section 20 provides for a commission on "original or renewal cash premiums which shall, during his continuance as said agent . . . be obtained, collected, paid to and received by said party of the first part up to and including the first year of assurance (should his agency continue so long)." By this the agent's commissions are limited to his term as agent. That ap-

pears to be the intention of the parties. This condition of section 20 would be entirely nullified by section XX22 if we were to look to that section alone. But section XX21 expressly reckons with section 20 and adopts it, making section XX22 subject to all its provisions, and section 20 expressly limits the right to renewals to the term of continuance of the agency. Hence the condition in section 20 that must be carried into section XX22 is that which limits the right of an agent to commissions to the term of his agency. That followed into the various extensions of the term of employment from year to year, and that, we think, was in the minds of the parties to be gathered from an interpretation of the contract as a whole. Hence we hold that this contract does not, expressly or by necessary implication, provide for continuing commissions to the agent on renewals collected or falling in after the end of the agent's employment.

With these provisions before us it is impossible to hold that plaintiff here is entitled to a commission on renewals on policies written by him when such renewals were collected after the termination of his employment.

We have duly considered all of the points cited by learned counsel for the appellant. One of these points is that the defendant had no right, under the contract, to terminate the agency. As we have before said, we do not think this position is maintainable.

We do not think it essential to notice the other points urged by that learned counsel, as what we have said disposes of the real crux of the case. Even if some of those points were sustained, and for that reason the judgment reversed and the cause remanded, the cause would ultimately turn upon the construction of the contract. Construed, as we have undertaken to do, as that contract must be, in no event could plaintiff recover.

It follows that the judgment of the circuit court should be, and it is affirmed.

*Becker, J.,* concurs; *Allen, J.,* in result only.