PROFESSIONAL AND BUSINESS MEN'S LIFE INSURANCE COMPANY, a Colorado corporation, Appellant,

v.

F. B. SALISBURY, Appellee.

No. 5367.

United States Court of Appeals Tenth Circuit.

Oct. 22, 1956.

Arthur Underwood, Jr., Denver, Colo. (Dawson, Nagel, Sherman & Howard, and Raymond J. Turner, Denver, Colo., with him on the brief), for appellant.

Fred M. Winner, Denver, Colo. (Anthony F. Zarlengo, Max D. Melville and Arthur W. Zarlengo, Denver, Colo., with him on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The appellant Professional and Business Men's Life Insurance Company, a Colorado corporation, herein called the Company, entered into an agency director's contract with the appellee F. B. Salisbury, dated January 3, 1952,[1] under the terms of which he was employed to represent the Company in the procurement of insurance policies as set out in the contract. The contract provided for commissions and the right of termination. The contract was terminated and Salisbury instituted this action to recover commissions which accrued after the termination of the contract. It is conceded that the contract was lawfully cancelled by the Company and the only question in the case is whether Salisbury was entitled to commissions on premiums paid to the Company after cancellation. The court below held that he was and entered judgment in his favor, and the Company has appealed. At the conclusion of the trial in a discussion with the attorneys, the court stated that since Paragraph 19, under which the contract was cancelled, contained no provision for

1. There was a preceding contract dated July 31, 1951, and a supplemental contract dated January 16, 1953, neither of which need be considered.

forfeiture of commissions upon such cancellation, appellee was entitled to continue to receive his commissions under Paragraph 2 throughout the life of the policies, notwithstanding the termination of the contract. While the court's formal conclusions of law are more detailed and are couched in somewhat different language, we think the above statement fairly reflects the court's theory of the case.

Paragraph 2 of the contract provides that the Company "will pay as a commission to the Party of the Second Part on premiums paid in cash on policies issued and delivered on applications secured by Party of the Second Part and Agents or Agencies under his supervision, *while this contract is in force*, the first year commissions and renewal commission set forth below."[2] The paragraph is silent as to what effect the cancellation of the contract will have on the right to receive commissions thereafter on premiums paid after cancellation.

We think the court erred in finding as a fact that the parties intended if appellee's employment was terminated under Paragraph 19 there should be no forfeiture of any renewal commissions to which appellee was entitled under the agreement. There are no facts in the record showing that this was ever discussed or understood by the parties to the contract, and certainly there is no such express provision in the contract. Had that been the agreement and understanding of the parties and had such a provision been omitted by mistake, it would have required a reformation of the contract which the court did not order. The conclusion is inescapable to us that the court found this as a fact from the legal construction it placed upon Paragraph 2 and Paragraph 19. We think aside from further considerations which will be discussed hereinafter Paragraph

2 negatives any thought that the schedule of commissions provided therein should be paid after the contract was lawfully terminated. We think Paragraph 2 means that the Company would pay commissions as set out "while this contract is in force" rather than that it would pay commissions after cancellation "on policies issued and delivered on applications secured by Party of the Second Part and Agents * * * while this contract is in force." In other words, "while this contract is in force" relates to what follows—the duty to pay commissions—not to what precedes securing policies while the contract is in force. Admittedly appellee would be entitled to commissions in any event only on such policies as were secured while his contract was in effect.

Such construction is in accord with the overwhelming weight of authority which holds that the right to renewal commissions depends upon the continued existence of the contract of employment and that such right ceases upon termination of the contract, unless there are express or necessarily implied provisions therein conferring the right to the receipt of such commissions after the termination of the contract. These authorities are collected and discussed in detail in annotations appearing in 79 A.L.R. at page 478 and 136 A.L.R. at page 167.[3] Certainly Paragraph 2 confers no such right; neither can we read anything into Paragraph 19 upon which the court relied which would confer such right. It was not necessary for Paragraph 19 to contain a provision for fixing the right to future renewals upon cancellation. The sole function of that Paragraph was to confer the right of cancellation. When that right was exercised lawfully, as it was here, the contract came to an end and the right to future commissions ceased unless there were other provisions in the

2. Emphasis supplied.

3. For some of the leading cases see: Fabian v. Provident Life & Accident Ins. Co., D.C., 5 F.Supp. 806; Barr v. Sun Life Assur. Co., 146 Fla. 55, 200 So. 240; Phillips v. Amer. Nat. Assur. Co., 227 Mo.App. 1136, 58 S.W.2d 814; Ballard v. Travellers' Ins. Co., 119 N.C. 187, 25 S.E. 956; Wallman v. United Casualty Co., 3 Cir., 147 F.2d 636.

281

contract preserving them. We find no such provisions in this contract.

A consideration of Paragraph 4, we think, supports that conclusion. It provides that if the contract should remain in force until April 1, 1954, before it was terminated, then the agent should receive renewal commissions thereafter, limited to a total of nine years. Here we have a paragraph providing for renewal commissions in the event of cancellation. Had it been intended that such commissions should be paid in other situations, no doubt the contract would have so provided. Under the construction placed upon the contract by the trial court, the agent would have received commissions for a greater number of years, in case of an early termination, than in the event the contract remained in force for a longer period of time. We think Paragraph 4 is the only contractual provision relating to the right to receive renewal commissions upon cancellation, other than in the case of disability, and that in the absence of other provisions the general rule applies.

Appellee speaks of ambiguity in the contract and of whether there were facts sufficient to support the trial court's finding "as to the intent of the parties when they signed this ambiguous agreement." We fail to find any ambiguity in the contract which would call for judicial construction. Neither do we think that the court made findings of fact supporting a finding of ambiguity as to what the contract means. The only findings which at all would tend to support a consideration of ambiguity in the terms of the contract are the court's Findings E and F.[4] In E the court merely finds that it was the intent of the parties that Paragraphs 4, 14 and 19 were independent paragraphs. We fail to see anything in the contract supporting such a finding. However, even if these three provisions are considered separate and apart, we still think that appellant must prevail. Subparagraph (a) of Finding E merely sets out that the parties intended that the clear provisions of Paragraph 4 should apply only if the contract continued to April 1, 1954. The court's finding with respect to Paragraph 14 is of no force because it is conceded that this contract was lawfully terminated. In subparagraph (c) the court found that it was intended that if the agent's employment were terminated under Paragraph 19 of the agreement the agent would not forfeit any renewal commissions. As pointed out, there is a complete absence of evidence showing that that was what the parties intended and that such a construction is clearly contrary to the plain language of Paragraph 19.

We think the court fell into error in talking about forfeiture here. The law is well settled that an agent has no vested interest in commissions to be paid after the cancellation of his con-

4. "E. When plaintiff and defendant corporation entered into the agreement of January 3, 1952 (Exhibit B hereof), the parties intended that paragraphs four, fourteen and nineteen of said agreement were independent paragraphs; and the parties intended:

"(a) That the provisions of paragraph four of said agreement should have no applicability unless and until plaintiff was employed under said agreement until after April 1, 1954.

"(b) That the provisions of paragraph fourteen of said agreement providing for a forfeiture by plaintiff of renewal commissions should apply only if plaintiff's employment by defendant corporation was terminated for one of the causes enumerated in paragraph fourteen thereof.

"(c) That if plaintiff's employment by defendant corporation was terminated under paragraph nineteen of said agreement, plaintiff would not forfeit any renewal commissions to which he was entitled under said agreements.

"F. The effective date of the termination of plaintiff's employment under said notice of termination of September 18, 1953 (Exhibit D hereof), was November 21, 1953, and plaintiff has earned and is entitled to receive commissions and renewal commissions under said agreements in the manner and at the times hereinafter set forth."

tract, nor does he have a power coupled with an interest in these contracts for commissions.[5] His right to such commissions depended upon his continued employment and came to an end upon the termination of the contract, unless there are provisions in the contract giving him a continued right to such commissions after termination. There being no such provisions in the contract, a forfeiture could not result because there was nothing to forfeit.

Reversed.

5. Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 5 L.Ed. 589; Scott v. Travelers' Ins. Co., 103 Md. 69, 63 A. 377; Andrews v. Travelers' Ins. Co., Ky., 70 S.W. 43; Locher v. New York Life Ins. Co., 200 Mo.App. 659, 208 S.W. 862.