**Augustine HAMAN and Theodore Hinkel, co-partners, d/b/a Hinkel & Haman Agency, Plaintiffs,**

v.

**GUARANTEE RESERVE LIFE INSURANCE COMPANY OF HAMMOND, INDIANA, a corporation, Defendant.**

Civ. No. 772.

United States District Court
D. North Dakota,
Southwestern Division.

Aug. 12, 1968.

William C. Kelsch, of Mandan, N. D., for plaintiffs.

E. F. Engebretson, of Pearce, Engebretson, Anderson & Schmidt, Bismarck, N. D., for defendant.

## MEMORANDUM OF DECISION

RONALD N. DAVIES, District Judge.

This action was commenced by Augustine Haman and Theodore Hinkel to recover commissions allegedly due them on renewal premiums paid on policies sold by them for Stockmen's Agency, Inc. (Stockmen's Agency) and reinsured and assumed by the defendant, Guarantee Reserve Life Insurance Company of Hammond (Guarantee Reserve), an Indiana corporation.

In early 1960 Stockmen's Agency had an exclusive agency contract with Stockmen's Health Mutual Insurance Company[1] (Stockmen's Health) under which the agency was to sell policies written by the insurance company and to manage its affairs and finances. In the summer of that year Stockmen's Agency approached the plaintiffs with the intention of employing them, as an agency, to sell Stockmen's Health policies. The plaintiffs were to sell policies issued by Stockmen's Health and were to employ, train and supervise writing agents. In return the plaintiffs were to receive a first year commission of 35% of the premium for each policy sold and an additional yearly commission of 15% of the premium when renewed by the insured. Of the 15% the plaintiffs were to receive a 5% overwrite with 10% going to the writing agent. Renewal commissions were to be paid on the basis that one year's production as agents entitled the plaintiffs to one year of renewal commissions, two years' production entitled them to two years of renewal commissions, * * * and after five years of production the renewal commissions were to become vested and they were entitled to renewal commissions as long as a policy remained in force. A written contract embodying the commission schedule, together with

---

1. The insurance company was a subsidiary of Stockmen's Agency with interlocking officers, and boards of directors.

other terms of employment, was to be prepared by Stockmen's Agency and executed at a future date.

The written contract, as prepared and offered to the plaintiffs in early 1962, provided that it could be terminated by either party upon thirty days notice. They refused to execute the contract because it contained conditions under which renewal commissions would not be paid after termination of the contract. Although a written contract was never executed, the plaintiffs continued selling policies and were paid commissions as previously agreed to by Stockmen's Agency.

On April 10, 1962, Stockmen's Health merged with Stockmen's Reserve Life Insurance Company, Inc. (Stockmen's Life), a newly created subsidiary of Stockmen's Agency.[2] Shortly thereafter the latter began to experience financial difficulties and it was anticipated that the North Dakota Insurance Commissioner would take appropriate action if corrective measures were not initiated by the company. In July, 1963, negotiations were commenced with the defendant Guarantee Reserve in an attempt to dispose of all accident and health, hospitalization and medical care, and life insurance policies written and issued by Stockmen's Life. The negotiations culminated in Stockmen's Life and Guarantee Reserve executing a "Contract of Reinsurance and Assumption" on July 27, 1963. This contract, ratified and approved by the stockholders of Stockmen's Agency, provided, among other things, that:

> "7. No liability, debt or obligation of Stockmen's is assumed by Guarantee Reserve under this contract other than the liability to the policy holders, certificate holders and beneficiaries of the insurance policies hereinabove specifically assumed, except as to commissions to agents, as provided for in connection with existing written contracts."

The contract was to become effective upon approval by the Insurance Commissioner of North Dakota and the Insurance Commissioner of Indiana. This was done on August 26 and August 28, 1963, respectively.

Prior to his approval of the contract, the Insurance Commissioner of North Dakota requested that Guarantee Reserve clarify its position regarding payment of commissions to agents of Stockmen's Life on policies that were to be reinsured under the reinsurance and assumption agreement. Guarantee Reserve complied in a letter dated August 19, 1963, which contained the following:

> "In keeping with your request regarding the payment of commissions to agents of Stockmen's Reserve Life Insurance Company on the business reinsured by Guarantee Reserve Life Insurance Company within a contract dated July 28, 1963, I have discussed the commissions with Mr. Davis, President of Stockmen's Reserve Life Insurance Company, and found that there are no written agreements between Stockmen's Health Mutual and Stockmen's Reserve Life and its agents and/or general agents.

> "It is our understanding that the writing agents have been paid 10 per cent and the general agents 5 per cent. This commission was to be paid so long as these agents devoted 100 per cent of their time to the development of these two companies.

> "Guarantee Reserve Life Insurance Company of Hammond will agree to continue the payment of commissions to presently active writing agents and to their general agents—writing agents have a commission of 10 per cent and general agents an overwrite of 5 per cent, with no recapture of commissions permitted to the general agent; so long as these agents and/or general agents are licensed by and contracted to Guarantee Reserve Life and devote all of their time and energy to

---

2. As policies issued by Stockmen's Health became renewable they were converted to policies issued by Stockmen's Life.

the business of Guarantee Reserve Life in the service of the business that they have written and in the production of a satisfactory amount of new business."

On October 9, 1963, the plaintiffs executed a general agent's contract with Guarantee Reserve which contained a commission schedule entirely unrelated to the oral agreement that the plaintiffs previously had with Stockmen's Agency. The general agent's contract provided that it could be terminated at any time by either party giving thirty days written notice. In the event that the agency contract was terminated by Guarantee Reserve, the plaintiffs were to continue to receive renewal commissions only so long as Guarantee Reserve policies in force secured by them were in excess of one hundred.

Guarantee Reserve then paid plaintiffs the renewal commissions that had accrued from July to October, 1963, on Stockmen's Life policies and commenced to pay them renewal commissions on each Stockmen's Life policy as it was renewed with Guarantee Reserve. During the period of October, 1963, to April, 1964, the plaintiffs procured only eleven new policy applications for Guarantee Reserve policies and, as a result, on April 22, 1964, they were notified that their general agency contract was terminated due to insufficient production and Guarantee Reserve ceased paying renewal commissions on both the Stockmen's Life policies and the eleven Guarantee Reserve policies. The plaintiffs then commenced this action seeking to recover renewal commissions on all Stockmen's Life policies sold by their agency and renewed with the defendant, alleging that the defendant had orally agreed to honor the oral agreement the plaintiffs had with Stockmen's Agency under which the plaintiffs were to receive renewal commissions on all Stockmen's Life policies secured by them which were renewed. As the plaintiffs were employed by Stockmen's Agency for a period of 38 months, they seek renewal commissions for a like period.

The weight of authority is "* * that the right to renewal commissions depends upon the continued existence of the contract of employment and that such right ceases upon termination of the contract, unless there are express or necessarily implied provisions therein conferring the right to the receipt of such commissions after the termination of the contract. These authorities are collected and discussed in detail in annotations appearing in 79 A.L.R. at page 478 and 136 A.L.R. at page 167." Professional & Business Men's Life Ins. Co. v. Salisbury, 238 F.2d 278 (10th Cir. 1956); Allied Mutual Insurance Company v. Roberson, 306 F.2d 130 (4th Cir. 1962).

This appears to be the rule applied in North Dakota. See Geiss v. Northern Insurance Agency, 153 N.W.2d 688 (1967), at page 690:

"Here, the plaintiff's right to payment of commissions for sale of insurance policies for the defendant was wholly dependent upon the contract between the plaintiff and the defendant. The right to commissions on renewal premiums depended upon the contract of the parties. In the absence of a specific agreement on the part of the defendant to pay the plaintiff such commissions on renewal premiums, the plaintiff would have no right or claim to any part of such renewal premiums."

The written agency contract between the parties herein contained no provisión for the payment of commissions on the Stockmen's Life policies renewal premiums. It is only in the "Contract of Reinsurance and Assumption," modified by the defendant's letter to the North Dakota Commissioner of Insurance, that any provision is made for payment of commissions on renewal premiums. Payment of commissions was contingent on the plaintiffs being "licensed by and contracted to Guarantee Reserve Life and devote all of their time

and energy to the business of Guarantee Reserve Life in the service of the business that they have written and in the production of a satisfactory amount of new business."

■ The plaintiffs contend, however, that Stockmen's Agency had orally agreed "should the agents' employment terminate for whatever reason, before the expiration of the said five years, then the right to renewal commissions would be vested for a future period equal to the length of their employment" and that the defendant had stated orally it would "honor" Stockmen's Agency's commitment. In view of the fact that the plaintiffs refused to execute a written contract prepared by Stockmen's Agency because it contained conditions under which renewal commissions would not be paid after termination of the contract, it is reasonable to assume that neither an express nor implied agreement was ever reached that would require Stockmen's Agency to pay the plaintiffs renewal commissions after termination of their contract. Assuming then that the defendant had agreed to honor the contract the plaintiffs had with Stockmen's Agency, it still would not be required to pay renewal commissions after termination of the contract.

The plaintiffs having failed to establish by a fair preponderance of credible evidence that an express or implied agreement existed under which they would be entitled to commissions on the Stockmen's Life policies renewal premiums after their agency contract had been lawfully and properly terminated by the defendant, they cannot recover in this action. The defendant is entitled to a dismissal of the plaintiffs' complaint and cause of action.

Formal Findings of Fact, Conclusions of Law, Order for Judgment and Judgment, in conformance herewith, will be prepared by counsel for the defendant and transmitted to the Clerk of this Court at her office in Bismarck, North Dakota.

It is so ordered.