distances from the town, and might lead, not only to serious inconvenience, but to grave abuses.

[2] Conceding, then, that the meeting in question should have been held within the town of Jackson, can an objection be made to what was done at such meeting by any of the officers who attended and participated in its proceedings? I am of the opinion that the acts of the town board in this particular case were coram non judice. Even if it should be held that the parties attending and participating in the acts of the meeting in question could not in their own interest object to what was done, which I doubt, yet the public is interested, and one of such parties, as a citizen of the town and acting in the interest of the public, could raise the question as to the legality of the meeting of the board held outside of the town.

While in the particular case everything was undoubtedly done with the best of motives, and with no desire to secure an unfair advantage, yet as a matter of principle, as well as under the general scheme of our laws relating to the acts of public officers, it should be held that the meetings of a town board should be within the town, except in the special cases otherwise provided for by statute. This is the better and safer holding to be adopted, and it is accordingly accepted as the law in this case.

An order may accordingly issue as prayed for, but, under the circumstances, without costs.

---

(87 Misc. Rep. 383)

### SUTHERLAND v. CONNECTICUT MUT. LIFE INS. CO. et al.

(Supreme Court, Trial Term, Erie County. November 23, 1914)

CONTRACTS (§ 116*)—VALIDITY—PUBLIC POLICY—AGENCY CONTRACTS.

The provision of plaintiff's contract of agency with defendant insurance company, that if he, at any time after termination thereof, engage in such business for another, all right to renewal commissions under it shall terminate, being valid, and not against public policy, he so engaging, after its termination by defendant as permitted by it, loses all right to renewals, even if fraud could be predicated on the termination before expiration of two years' employment, necessary in any event to give right to such commissions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 542–552; Dec. Dig. § 116.*]

Action by Alexander Sutherland against the Connecticut Mutual Life Insurance Company and another. Judgment for defendants.

Clark H. Timmerman, of Buffalo, for plaintiff.

Kenefick, Cooke, Mitchell & Bass, of Buffalo (Edward H. Letchworth, of Buffalo, of counsel), for defendants.

WOODWARD, J. The complaint alleges that the plaintiff is a resident of the city of Buffalo, and duly authorized to transact the business of an insurance broker, and that the defendant the Connecticut Mutual Life Insurance Company is a foreign corporation, with its principal place of business in the city of Hartford, Conn.; that heretofore, and

---

٠For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on or about the 3d day of June, 1907, the above-named plaintiff and one David B. Cooper, as general agent of said defendant the Connecticut Mutual Life Insurance Company, entered into a certain contract in writing, wherein and whereby the plaintiff herein became the agent of said Cooper and of the said defendant, etc. The contract mentioned by its own terms provided that the event of the death of either party thereto, or "the termination of the general agency contract between the first party and the said company, shall terminate this agreement," and it appears clearly that the general agency contract was terminated, and that the contract above mentioned shall terminate with the termination of such contract, so that it is difficult to understand how the fact of the existence of this particular contract with Cooper had any relation to the further facts set forth in the complaint, though it seems to be contended that a subsequent contract, bearing date of the 14th day of March, 1910, operated as a renewal of the Cooper contract.

The Cooper contract expiring or terminating upon the termination of the general agency of Cooper, all rights under that contract became fixed, and when the Connecticut Mutual Life Insurance Company entered into a new contract with the plaintiff on the 14th day of March, 1910, which contract was under seal, it would seem that there was a mutual agreement that the Cooper contract of general agency had been terminated, and that the Cooper contract had ceased to exist for all purposes, except, perhaps, the adjustment of any renewal premium, and there does not appear to be any contention that there are any such matters open between the parties to this action, in so far as. they relate to the Cooper contract. The Cooper contract was the contract of a general agent of the Connecticut Mutual Life Insurance Company with a local agent in the city of Buffalo, while the contract of March 14th was a direct contract between the company and the local agent, clearly showing that the general agency was at an end. The complaint alleges the making and delivery of this contract between the Connecticut Mutual Life Insurance Company and the plaintiff, which it is claimed constituted a renewal of the Cooper contract, and then alleges that on the 14th day of April, 1910, one month later, "the plaintiff herein entered into a certain agreement with said defendant and its general agent, George W. Brandel, renewing said contract hereinbefore set forth." This latter contract, which purports to be under the hands and seals of the parties thereto, is between "George W. Brandel, General Agent," and "A. Sutherland," and bears the indorsement, under date of April 16, 1910:

"The Connecticut Mutual Life Insurance Company hereby guarantees to the second party to the within agreement the payment of such commissions as, in accordance with the terms and conditions of said agreement, shall be due at and shall become due after, its termination."

To call this a renewal of the contract of March 14, 1910, between the Connecticut Mutual Life Insurance Company and the plaintiff, is hardly the correct characterization. It is clearly the intention of the parties to substitute the contract of April 14, 1910, for that of the date of March 14, 1910, for they are between different parties, both under

seal, and we know of no rule of law which under such circumstances makes the later contract a renewal of the earlier one. They are distinct instruments between different parties, and it is obvious that the contract of March 14th was made in the absence of a general agent, and that the subsequent contract was made to meet a situation existing when the Connecticut Mutual Life Insurance Company had entered into a contract of general agency with the defendant Brandel, and the new contract with the general agent, guaranteed by the defendant company, was merely a substitution for the former contract.

If we are right in this proposition, it follows that in the determination of the present controversy it is only necessary to consider the language and terms of the last contract. The complaint, however, insists upon treating these three distinct contracts between different parties as one continuing contract, and alleges that during the term—

"of said contracts hereinbefore alleged this plaintiff procured new insurance for said defendant * * * pursuant to the terms of said contracts, to the amount of about the sum of $165,000, upon which this plaintiff was and is entitled to the payment of his certain commissions on first year premiums or renewal premiums; that thereafter, and on or about the 10th day of January, 1912, the above-named defendant and its general agent, George W. Brandel, attempted to terminate said contract by virtue of a certain notice, * * * and refused to permit said plaintiff to act thereunder or perform his part thereof; that thereafter said defendant also attempted to terminate said contract, and ratified said attempted termination of said contract by said general agent; that the said attempted termination of said contract by said defendant, through its said general agent and by said general agent, was fraudulent and void and unconscionable, and wholly without any real or pretended cause, and that said contract was not terminated in good faith, but said defendant attempted to terminate the same wholly for the purpose of defrauding this plaintiff out of certain renewal commissions to which this plaintiff was and is entitled under and by virtue of the terms of said contracts and each thereof; that this plaintiff has at all times been ready and willing to perform said contract."

The complaint further alleges, on information and belief, that since the said 10th day of January, 1912, and before the date of the commencement of this action, said defendant the Connecticut Mutual Life Insurance Company had received as renewal cash premiums on policies of insurance procured through the agency of said plaintiff the sum of about $4,000; that this plaintiff has no means of knowing the exact amount paid, said information being exclusively in the hands of the defendants in this action; that under the terms of said contracts hereinbefore set forth the plaintiff herein is entitled to the sum of $200 as commissions on renewal cash premiums received by said defendants on policies procured through the agency of this plaintiff; and "that said defendants have neglected and refused and still refuse to pay said sum or any part thereof."

The above is the substance of the complaint in the first cause of action, and as the second cause involves much the same matters, and must follow the determination of the first cause, there is no occasion for considering the special allegations of the second cause. It is stipulated that the defendant George W. Brandel terminated the contract existing between him and the plaintiff on the 10th day of January, 1912;

that the plaintiff was paid his commissions on premiums on insurance which he had written with the defendants, paid prior to February 1, 1912, and subsequent to his discharge, as follows: January 31, 1912, $4.98; February 19, 1912, 57 cents; February 20, 1912, $4.96. It is likewise stipulated that the plaintiff entered the employ of Parker & Hinckley, general agents of the New England Life Insurance Company, and commenced doing business for that company on February 1, 1912; that the commissions on premiums paid on insurance written by plaintiff for the defendants from the date he entered the employ of Parker & Hinckley to the date of the commencement of this action, would have amounted to the sum of $156.14, at the rate of $3\frac{1}{2}$ per cent., of which $66.98 is under the contract with Brandel; that Brandel subsequently offered to re-engage the plaintiff, submitting a copy of a proposed contract, which the plaintiff refused to sign, and that Brandel subsequently withdrew the offer; and that the amount of business written by the plaintiff is as set forth in certain schedules, not necessary to be considered here.

While fraud is alleged, no facts from which the inference of fraud arises have been proved upon the trial of this cause; and while we are not ready to hold that this is fatal to the action under the provisions of section 549 of the Code of Civil Procedure, we are of the opinion that the broad question presented at this time is whether, under the contracts of March 14, 1912, and April 14th of the same year, the defendants are liable to the plaintiff in any sum whatever. There is no doubt that where a contract of agency is entered into with an insurance company, or its general agent, by the terms of which the agent is to receive his compensation through commissions upon the original policy, with stipulated commissions upon the various renewal premiums, the agent's right to renewal premiums, in the absence of special provisions in the contract, does not terminate with the termination of the contract of employment. The renewal commissions are earned in a measure in the original contract of insurance, and upon the payment of the renewals the agent is entitled to his commissions according to the terms of the contract of agency, even though, at the time of such renewals, he has ceased to represent the insurance company as its agent. But it is not to be doubted that a person may enter into such a contract of agency that he will not be entitled to renewal premiums after the termination of his employment, or upon the happening of any other contingency mutually agreed upon, and that, it seems to us, is the situation of the plaintiff in this action. The right of the plaintiff to the commissions which he is here claiming does not hinge in any manner upon the alleged fraudulent termination of the contract. Whether the contract was or was not terminated in good faith is of absolutely no importance, for the reason that the defendants' refusal to pay such renewal commissions is not based upon the fact that the plaintiff is no longer their agent, but that he is now the agent of a rival insurance company, and by the express terms of all of the contracts relied upon the plaintiff, who is presumably competent to contract, has agreed that:

"If the second party shall at any time after such termination engage in the business of life insurance, except for the first party, all rights to renewal commissions hereunder shall thereupon terminate."

In other words, these contracts provided that the plaintiff should be employed for an indefinite period, that the contracts might be terminated by either party by giving the other party notice thereof in writing, that the terms of payment for such services should be based upon the first year's premiums, with certain allowances for each of several renewal premiums, and that if the contract of employment was terminated for "any other reason" than that of the death of the agent or the termination of the general agency, after it had been in effect for two years, the rates of such renewal commissions should be as fixed in an annexed schedule. But all of these provisions were subject to the further stipulation that:

"If the party of the second part shall at any time after such termination engage in the business of life insurance, except for the said company, all rights to commissions thereunder shall thereupon terminate."

There was no absolute right to these renewal commissions. The parties had a perfect right to agree upon the conditions upon which the renewal commissions should depend, and the plaintiff having agreed to remain out of the insurance business for any other company as a condition of receiving the renewal premiums, he is not in a position to claim the commissions after having engaged with the New England Life Insurance Company. The contract violates no public policy. It does not obligate the plaintiff to desist from earning a livelihood in the insurance business. It merely provides that, if he elects to engage in such business during the running of the policies which he has written, he will not demand the commissions upon the renewals. This was a lawful condition. The plaintiff had a perfect right to stipulate as to the conditions on which he was to receive the renewal commissions, and no case has yet held under these circumstances that a plaintiff was entitled to recover. If the plaintiff had, in fact, remained in the employment for two years or more, he would not, under the facts as they now appear, be entitled to the renewal commissions; for he has voluntarily waived his rights thereto by accepting employment in a rival company. The fact that the defendants terminated the contract in less than two years, under the provisions which expressly reserved such right, is wholly without importance. Presumptively such action was in good faith, but whether it was or not can have no bearing here, for the reason that the plaintiff has not stood upon his rights as fixed by the contract, but has chosen to go to work for a different company, and this has destroyed his rights to the commissions. All his rights to renewal commissions depend upon the proviso of the contract that he should not accept employment by another company. Chase v. N. Y. Life Ins. Co., 188 Mass. 271, 273, 74 N. E. 325.

But there is nothing to establish bad faith on the part of the defendants. They had reserved in their contract the right to terminate the same upon serving written notice. This right was equally preserved to the plaintiff, and no one would think of holding that, if the plain-

tiff had himself acted upon this provision and terminated his employment, he would be entitled to the renewal commissions if he went to work for a rival corporation. But the right of terminating the contract was mutual, and the plaintiff would have been entitled to the renewal premiums so long as he refrained from accepting other insurance employment, whether he terminated the contract, or it was terminated by the defendants.

Indeed, it may be stated that, in the absence of any provision in the contract itself, the defendants were at liberty to terminate the contract at will. It was not an employment for two years, or for any other term. It was an indefinite employment, and it has been held that where one was hired for an indefinite time, although at an annual rate of compensation, the employment was at will and could be terminated at any time by either party. Wightman v. New York Life Ins. Co., 119 App. Div. 496, 498, 499, 104 N. Y. Supp. 214, and authorities there cited. The contract stipulated that this particular contract might be terminated by written notice by either party, and as such termination did not affect the rights of the plaintiff under the facts as they now appear, for the reason that he has violated the condition upon which such renewal commissions depended, we must entirely dismiss from consideration the unproved allegations of fraud in the terminating of the contract. The plaintiff would not be entitled to the renewal commissions now, if he had remained in the employment for two years, even if it be conceded that fraud could be predicated on the exercise of a right specially reserved to each of the parties by the terms of the contract, and which would have belonged to either party had no such reservation been made. There was no agreement, expressed or implied, to employ the plaintiff for two years. It was merely agreed that the plaintiff should be entitled to certain commissions if he remained in such employment for two years, with the right in either party to terminate the employment by giving a written notice; but it was further provided that this right to commissions, even after two years, should depend upon the plaintiff remaining out of the employment of rival companies. The plaintiff has failed to comply with either of these conditions, and while it might be that if there was evidence to support a charge of fraud, if it could be made to appear to this court that the reserved power to terminate the contract was exercised for the purpose of defeating the legitimate purposes of the contract, some way might be found to preserve the rights of the plaintiff, no such condition is disclosed by the pleadings and evidence.

The defendants are presumed to have acted in good faith in doing what the contract provided they might do, and the mere fact that the termination of the contract would operate to deprive the plaintiff of commissions which he had not earned, unless he had made himself acceptable to his employers for a term of two years, does not overcome this presumption in any degree. Buffalo is a large city. The local agent of a large insurance company ought, in the ordinary course of business, to write a large amount of business in two years, and the company might legitimately make special concessions in the way of commissions to stimulate the agent to push the work; but it cer-

tainly is not bound to keep an agent who does not meet the reasonable expectations in the volume of business produced, that such agent may be paid commissions upon a small number of policies which he had placed among his immediate friends with comparatively little effort, and one who depends upon fraud must show a stronger case than the mere fact that the defendant had exercised a right belonging to him under the express terms of his contract.

We have no quarrel with the authorities cited in behalf of the plaintiff. Each one of the cases is correctly decided upon the facts as they appeared upon the trial of those causes. But not one of them runs counter to the determination reached in this case. In Hercules Mutual Life Assurance Society v. Brinker, 77 N. Y. 435, the contract provided that the agent should be paid the renewal commissions for a fixed period, upon policies procured by him upon the collections being made by himself, with a provision for decreasing the commissions when the premiums were collected by others, and the court properly held that the right to commissions accrued upon the making of the original policy, subject only to the collection in the manner specified in the contract. There the contract was absolute, and in respect to all policies, regardless of time or other conditions which exist in the present case.

In Heyn v. New York Life Ins. Co., 118 App. Div. 194, 103 N. Y. Supp. 20, the court held that, where a contract of agency for an indeterminate period provides for commissions on the original or renewal cash premiums collected "during his continuance as said agent," the agent is not entitled to commissions after the termination of the employment. This case was reversed in the Court of Appeals (192 N. Y. 1, 84 N. E. 725) upon the ground, not that the court below was mistaken in the law, as applied to the contract, as it was assumed to be, but that the contract itself did not limit the commissions to those collected during the term of the employment. It was held that a different clause of the contract furnished the measure of the compensation. There is no suggestion that, if the terms of the contract had limited the commissions to the time that the plaintiff remained in the employment, the court would not have enforced that provision. It simply held that this clause, being left blank as to the term of years, was not complete, and that the clause of the contract in writing controlled. It announced no new principle of law. It simply gave a construction to the contract which took it out of the rule announced in the court below. See Aldrich v. New York Life Ins. Co., 121 App. Div. 18, 105 N. Y. Supp. 493.

Judgment for the defendants, dismissing the complaint, with costs.