## MASDEN v. TRAVELERS' INS. CO.
### No. 9095.

Circuit Court of Appeals, Eighth Circuit.
Sept. 8, 1931

William G. Boatright, of Kansas City, Mo. (I. J. Ringolsky and Harry L. Jacobs, both of Kansas City, Mo., on the brief), for appellant.

O. C. Mosman, of Kansas City, Mo. (Clay C. Rogers, Paul A. Buzard, and Don E. Black, all of Kansas City, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and YOUMANS, District Judge.

GARDNER, Circuit Judge.

This is a suit in equity, brought by appellant, as plaintiff below, against appellee, an insurance company, for an accounting, based upon a contract of employment as a soliciting agent. The parties will be referred to as they appeared in the lower court.

The contract was for an indefinite duration, but provided that it could be terminated by either party on seven days' written notice to that effect. By its terms, plaintiff was entitled to receive a commission on all premiums reported and paid on policies issued on applications secured by him after the date of the contract, as follows: (a) A certain per cent. on premiums the first year of the insurance, and (b) a certain per cent. for a certain number of years of renewal premiums. The right to the commission on renewal premiums is the only question involved in this suit.

Section 1 of the contract described the territory of plaintiff's employment as "Kansas City, Missouri and vicinity." Section 3 provided that plaintiff should devote his entire

time and energies to the promotion of the interests of the defendant and to faithfully canvas in the territory described, for life, accident, and health insurance, and that "he will not, without the written consent of the defendant, directly or indirectly transact life, accident or health insurance for any other company."

Paragraph 8 provided that: "If the agent shall neglect to report and pay over premiums collected by him as provided herein, or shall otherwise violate any of the provisions hereof, all of his rights hereunder and under any previous contracts, including the right to commissions on all premiums payable thereafter and on renewals of all policies written hereunder and under any previous contracts shall thereby forthwith terminate."

Paragraph 11 dealt with the subject of compensation with considerable detail. Part 3 of that paragraph provided as follows: "If this contract shall be terminated after the agent has been continuously in the service of the company under this or any previous contract for two or more years, or shall be terminated by the death of the agent, and if the agent has not violated any of his obligations hereunder, the company will pay the renewal commissions earned under part 2, to the agent, his executors or administrators, or to such person as he may designate with the consent of the company; but in case of the termination of this contract other than by the death of the agent before the agent shall have served the company continuously for a period of two years, and if the agent has not violated any of his obligations hereunder, all premiums thereafter reported and paid on which the agent shall have earned a renewal commission shall be subject to a collection fee of two (2) per cent."

Paragraph 15 provided that: "If the agent shall leave the service of the company and endeavor to take an agent of the company away from its service, or shall induce a policyholder to relinquish a policy or policies in the company, the agent shall forfeit any interest in commissions that he might otherwise be entitled to under this or previous contracts."

Paragraph 18 provided that: "If the agent shall at any time within one year from the date of the termination of this contract for any cause whatsoever, enter the employment of any other life insurance company to work in the territory specified in Section 1, all right to further commissions on renewals shall cease with the date of such employment."

Plaintiff's right of recovery is bottomed on the contract, and his right to commission on renewal premiums must therefore be derived from the contract itself. Chicago Life Ins. Co. v. Tiernan (C. C. A.) 263 F. 325, 332; Travelers' Ins. Co. v. Hermann, 154 Md. 171, 140 A. 64; Chase v. New York Life Ins. Co., 188 Mass. 271, 74 N. E. 325; Sutherland v. Connecticut Mutual Life Ins. Co., 87 Misc. Rep. 383, 149 N. Y. S. 1008; Sunshine Cloak & Suit Co. v. Roquette Bros., 30 N. D. 143, 152 N. W. 359, L. R. A. 1916E, 932. If these provisions of the contract were valid and had not been waived, then, confessedly, plaintiff was not entitled to recover.

It is first contended by the plaintiff that the provision of section 18, to the effect that if within one year from the date of the termination of his contract for employment, he should enter the employ of any other life insurance company to work within the territory specified in section 1, all right to further commission on renewal premiums should cease, was waived by the insurance company at the time of the termination of his contract of employment, which was by mutual consent. To constitute a waiver there must be a voluntary relinquishment of a known right, and the question is largely one of intention. The question of intention must, therefore, be proven as a fact, and the best evidence of intention is to be found in the language used by the parties, or their acts and conduct. The intention need not necessarily be proved by express declarations, but may be shown by the acts and conduct of the parties from which an intention to waive may reasonably be inferred. The burden of proof is, of course, upon the party claiming the waiver. It is therefore necessary to examine the evidence claimed by the plaintiff to establish this waiver.

While plaintiff was in Hartford, Conn., consulting with representatives of the Connecticut General Life Insurance Company, he met the superintendent of agencies of the defendant and had a conversation with him. This was before he had signed his contract with the Connecticut General Company. It was found by the referee, and affirmed by the lower court, that plaintiff was invited to Hartford, Conn., by the Connecticut General Life Insurance Company to consider a proposition from that company for employment by it; that he accepted this invitation without the knowledge of the defendant, but that while there he met the representatives of the defendant company and went to the office of its superintendent of agencies; that he re-

fused to disclose the proposition made him by the Connecticut General Company, but invited the defendant to make him a proposition to continue in its employ; that plaintiff and defendant's representatives again met the following morning at the office of the defendant, and the representatives of the defendant said to the plaintiff that the matter of his terminating his employment and accepting employment with the Connecticut General had been talked over and that they were reconciled to the plaintiff going with the other company and believed that if he accepted the proposition made to him by the Connecticut General it would be better for both plaintiff and defendant, and that they thought it was the best thing for the plaintiff to do and that they were willing that he should go and hoped that he would make the contract with the Connecticut General Life Insurance Company and wished him well; that if plaintiff ever wanted to return to the defendant company "the latchstring was out," or words to that effect.

The mere fact that defendant may have been willing that plaintiff not only terminate his contract, which, of course, he had a right to do, but should enter the employ of another insurance company at Kansas City, which also he had a right to do, did not imply that the defendant waived the conditions of its contract. No express waiver is contended for, and it is significant that while plaintiff knew and appreciated the provisions of paragraph 18 of his contract, having complained about it at various times and having sought to have it eliminated, yet he made no mention of it at the time of his conversation with representatives of the defendant. The defendant was warranted in assuming, certainly, that plaintiff, in accepting employment in the rival company, would do so in accordance with the terms of his contract. There was no inconsistency in the attitude of defendant's agents, and the intention to enforce the provisions of the contract. As has already been observed, the contract did not prevent plaintiff from doing exactly what he proposed to do, but it specifically provided for such contingency. We are of the view that the proof falls far short of establishing a waiver of this provision of the contract.

It is next urged that paragraph 18 of the contract was void because it imposed an unreasonable restraint upon plaintiff's right to work and earn a living. It has already been pointed out that there was no limitation upon plaintiff's right to enter the employ of a rival company at any time he saw fit so to do. True, if he entered such employment within one year from the time of terminating his contract of employment with the defendant, he thereby terminated his right to receive commission on renewal premiums, but this limitation was for a period of only one year. His right to such commissions had not accrued, but was prospective and contingent. The restraint was not unreasonable, and there was nothing in such restriction that was injurious to the public. The restriction was limited, both as to territory and time. Where the nature of the employment is such that it will bring the employee in personal contact with the patrons and customers of the employer, or will enable the employee to acquire valuable information as to the nature and character of the employer's business and the names and requirements of the patrons and customers of his employer, thus enabling the employee, by engaging in a competing business, either for himself or for another, to take advantage of such knowledge of his former employer's business, or his acquaintance with the patrons and customers of such employer, the decisions quite generally hold that a court of equity will interfere on behalf of the employer, and restrain the breach of a covenant not to engage in such competing business, providing the covenant does no violence to the rule that the restraint shall not be greater, either as to territory or time, than may reasonably be necessary to protect the business or good will of the employer. The reason for such a provision is elucidated by what is said by this court in Chicago Life Ins. Co. v. Tiernan, supra, in an opinion by Judge Sanborn, where it is, among other things, said: "It is evident from the contract that they expected that Tiernan would procure a large amount of the insurance which the company expected to write. The company knew that he and his employees would thus become intimately acquainted with and continue to have great influence on the policyholders they procured, and that they might and probably would be able to draw them from it to any other company for which they should engage in the insurance business."

In view of the limitations, both as to time and territory, the provision could not be said to be an unreasonable restraint of trade under the authorities. Chase v. New York Life Ins. Co., 188 Mass. 271, 74 N. E. 325, 326; Herrick v. New York Life Ins. Co., 202 Mass. 478, 88 N. E. 1092; Bohrnstedt v. Travelers' Ins. Co., 123 Or. 539, 259 P. 419, 262 P. 938; Wallace v. American Life Ins. Co., 116 Or.

195, 237 P. 974; Sutherland v. Connecticut Mutual Life Ins. Co., 87 Misc. Rep. 383, 149 N. Y. S. 1008, 1012; Himes v. Masonic Mut. Life Ass'n, 215 Ala. 183, 110 So. 133; Barton v. Travelers' Ins. Co., 84 S. C. 209, 66 S. E. 118; Carter v. Alling (C. C.) 43 F. 208; Knapp v. S. Jarvis Adams Co. (C. C. A.) 135 F. 1008.

In Chase v. New York Life Ins. Co., supra, the Supreme Court of Massachusetts said: "As the plaintiff sues upon the contract, he must abide by its terms. His right to commissions on renewal premiums depended upon his abstaining from engaging in the business of life insurance in any capacity in the state of Massachusetts. He chose to engage in such business, and we find no agreement in the contract to pay him commissions on renewal premiums in case he chose to become a competitor of the defendant."

In Sutherland v. Connecticut Mutual Life Ins. Co., supra, the question here involved is considered by the New York court, and in construing a similar contract the court said: "The contract violates no public policy. It does not obligate the plaintiff to desist from earning a livelihood in the insurance business. It merely provides that, if he elects to engage in such business during the running of the policies which he has written, he will not demand the commissions upon the renewals. This was a lawful condition."

▮ It is next urged that paragraph 18 of the contract was void because it imposed a penalty. This contention is based on the assumption that the plaintiff had acquired a vested right in the renewal commissions, and that they had already been earned by him at the time the contract was terminated. But the only right the plaintiff had to these renewal commissions was such as he might acquire by compliance with the contract. As said by the Supreme Court of Kentucky in Thurman v. Rodman, 206 Ky. 180, 266 S. W. 1047:

"That appellant's right to commissions on undue and unpaid renewal premiums was an unaccrued, prospective, and contingent one is at once apparent from the fact that the right, by the inherent character of the thing to which it is attached, could not possibly ripen into an absolute right, unless and until the renewal premiums were paid by the insured to the company, a contingency which might or might not happen. The right of the parties to stipulate that other contingencies would also prevent such a right from ripening into an absolute one seems so clear and elemental that further discussion seems useless. * * *

"It therefore seems perfectly clear from these provisions alone that the so-called forfeiture clause states but a contingency attached to, or a limitation upon, plaintiff's right to renewal commissions, and that it is not, therefore, a provision for forfeiture of a vested right therein, which view is but strengthened by many other provisions in the contract, and by the contract considered as a whole, as well as by the cases from this and other courts on the subject."

This question was urged upon the court in Bohrnstedt v. Travelers' Ins. Co., 123 Or. 539, 259 P. 419, 262 P. 938, 939, and was disposed of in the following terse sentence: "There is no merit in the contention that the forfeiture clause is unenforceable as a penalty."

See also Chase v. New York Life Ins. Co., 188 Mass. 271, 74 N. E. 325; Barton v. Travelers' Ins. Co., 84 S. C. 209, 66 S. E. 118.

▮ It is finally urged that the contract was a Connecticut contract, because the final signature necessary to its validity was affixed in that state, and that under a controlling decision of the Supreme Court of that state (Samuel Stores v. Abrams, 94 Conn. 248, 108 A. 541, 9 A. L. R. 1450), paragraph 18 was void. We need not stop to consider the rule of that decision, because we do not deem it important, as the question here involved is that of the interpretation of this contract, which is a matter of general law. It is not suggested that there are any statutory provisions in the state of Connecticut affecting its validity, and, hence, the federal courts are not bound to follow the decisions of the state courts. Black and White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U. S. 518, 48 S. Ct. 404, 72 L. Ed. 681, 57 A. L. R. 426; Odegard v. General Casualty & Surety Co. (C. C. A.) 44 F. (2d) 31; Bush v. Bremner (C. C. A.) 36 F. (2d) 189; Inter-Southern Life Ins. Co. v. McElroy (C. C. A.) 38 F.(2d) 557; Security Life Ins. Co. of America v. Brimmer (C. C. A.) 36 F.(2d) 176.

Clearly, under the unambiguous terms of the contract here involved, the plaintiff was not entitled to recover, and the judgment of the lower court is therefore affirmed.