## UNITED INSURANCE AGENCY, INC.
### *v.* Herbert Ray MARTIN

75-158                                                529 S.W. 2d 871

Opinion delivered December 1, 1975

*Nolan, Anderson & Jones,* for appellant.

*Mahony & Yocum,* for appellee.

J. FRED JONES, Justice. This is an appeal by United Insurance Agency, Inc. from a chancery court decree in favor of the respondent-appellee Herbert Ray Martin in which the

chancellor granted Martin's motion for summary judgment on a petition filed by United for a restraining order and damages for breach of an employment contract. The petition alleged that United is an Arkansas corporation with principal offices located in El Dorado, Union County, Arkansas; that on or about May 24, 1972, Martin entered into an employment agreement with United Insurance Agency, a partnership, and that the plaintiff corporation had succeeded to the interest of the partnership in said agreement. A copy of the entire agreement was attached as an exhibit to the petition and its pertinent provisions are as follows:

"THIS AGREEMENT made and entered into this 24 day of May, 1972, by and between UNITED INSURANCE AGENCY, a partnership (hereinafter referred to as 'UNITED') and HERBERT RAY MARTIN, (hereinafter referred to as 'MARTIN').

### WITNESSETH:

UNITED hereby employs MARTIN, and MARTIN hereby accepts employment from UNITED on the following terms and conditions:

1. MARTIN agrees to devote his entire time during his employment hereunder faithfully and diligently to the service of UNITED. During this employment, he will not, directly or indirectly, place any insurance whatsoever with or through any other insurance agency or company or the agent, representative or broker thereof, unless authorized and directed to do so by UNITED.

2. MARTIN agrees that within the territory assigned to him by UNITED he will solicit and procure applications for fire, life, casualty, accident, disability, health and all other types of insurance and will render such services to policyholders and perform such other incidental duties as may be requested of him from time to time by UNITED.

3. (a) MARTIN shall be paid such compensation as the parties may determine, from time to time, by mutual agreement during his employment. It shall not be necessary to set forth the compensation in writing but

such compensation is and shall be a material part of the consideration for this Agreement.

(b) New York Life Insurance Company and/or other insurance companies pay commissions, and/or compensation direct to the individual broker. The parties specifically understand, covenant and agree that any and all commissions, checks, monies or compensation of any type or nature paid, accrued or due as a result of work performed by MARTIN while in the employment of UNITED belongs to UNITED and will be immediately endorsed and paid over to UNITED as its property; and

(c) In the event of the termination of the employment of MARTIN for any cause whatever, any and all commissions, monies, expenses, or compensation of any type or nature which has accrued at the date of termination or may thereafter accrue shall belong to and be the property of UNITED, regardless of when the same may be paid.

* * *

5. MARTIN AGREES that he will not, within a period of five (5) years following the date of the voluntary or involuntary termination of his employment with UNITED, either directly or indirectly, by and for himself, or as agent of another, or through others as his agent within an area of a radius of seventy-five (75) miles of the City of El Dorado, Union County, Arkansas:

(a) Engage in, or in any way be connected with, the fire, life, casualty, accident, disability, health or any other type of insurance business, directly or indirectly.

* * *

8. In the event of any breach or violation by MARTIN of this contract, UNITED shall have the right to enforce specific performance of all the agreements on the part of MARTIN. The rights and remedies given to or reserved by the employer hereunder shall be construed and held to be accumulated and not exclusive of any right or remedy otherwise available.

9.1 This contract may be terminated at any time by

UNITED or MARTIN by mailing or delivering to the other written notice of termination.

9.2 Upon termination of MARTIN'S employment, his compensation and right to any compensation shall absolutely cease, and neither MARTIN nor any person, firm or corporation claiming under or through him shall have any claim whatsoever against UNITED for any compensation of any nature, except only for the agreed compensation which in the usual course of business had become certain and due and payable to MARTIN prior to the effective date of such termination.

9.3 No modification of or addition to this Contract shall be valid or effective for any purpose unless embodied in an endorsement of this Contract signed by a partner of UNITED and by MARTIN."

The petition then alleged that on or about August 15, 1972, Martin terminated his employment with United and became associated with Benton, Owens, Martin, Inc., an insurance agency with principal offices located in Little Rock. The petition then alleged that subsequent to August 15, 1972, Martin had engaged in activities which violated the terms of the employment agreement with United; and, the petition prayed permanent injunction restraining Martin from the act of competing directly or indirectly with United within an area having a radius of 75 miles of the City of El Dorado for a period of five years from August 15, 1972. The petitioner then alleged monetary damages and prayed an award of such damages as United would be able to prove.

Martin filed motion for summary judgment alleging that there was no genuine issues as to the terms of the employment agreement; that the agreement is void and unenforceable, and that he was therefore entitled to a summary judgment in his favor. Martin also filed an answer in which he admitted that he was a resident of Pulaski County. He denied generally the allegations in the petition and alleged damages by way of counterclaim.

United filed a reply to motion for summary judgment in which it simply stated as follows:

"There are material issues of fact disputed in this cause and Defendant is not entitled to a Summary Judgment as a matter of law.

The Agreement involved in this dispute is not void and unenforceable as a matter of law."

The appellant argues that the summary judgment should be reversed because in effect it makes all covenants not to compete invalid per se if they involve a period of five years. We do not so construe the effect of the chancellor's decree or order granting the motion for summary judgment in this case. In determining the validity of a contract not to compete, the courts have always examined the facts and circumstances of the particular case. *Miller* v. *Fairfield Bay,* 247 Ark. 565, 446 S.W. 2d 660 (1969). It is apparent from the record that the chancellor did consider the contract, pleadings, briefs, and oral arguments in determining that the five year restriction was unreasonable and the contract void in this case. It would thus appear that the chancellor examined the particular circumstances surrounding this case and not solely the length of time involved in the covenant. Such examination of the facts, however, does not preclude a summary judgment. Ark. Stat. Ann. §29-211 (Repl. 1962 and Supp. 1973) sets out the procedure for summary judgment, and §29-211 (c) states the situations where a summary judgment is required as follows:

". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The agreement in this case was entered into between the appellee Martin and a partnership insurance agency. The agreement was then apparently assigned by the partnership to the appellant corporation. The agreement does not define the appellee's allotted territory nor does it set out the remuneration the appellee is to receive for his services, but only provides that his compensation is to be determined from time to time by oral agreement. The agreement provides in

express terms that it may be terminated at any time. The agreement not only provides in paragraph 3 (c) that Martin is to forfeit to United all remuneration accrued at the time of termination of the agreement for any cause, the agreement then attempts to prevent Martin from engaging in, or in any way becoming connected with, the insurance business directly or indirectly within a radius of 75 miles of El Dorado for a period of five years.

It is true that upon a motion for summary judgment the burden of demonstrating the nonexistence of a genuine fact issue is upon the moving party (*Wirges* v. *Hawkins,* 238 Ark. 100, 378 S.W. 2d 646 [1964]), but in the case at bar the appellant does not challenge the judgment on the ground that there were facts in dispute, except by the mere allegation in its reply to the motion for summary judgment. We conclude that the chancellor was right in granting the motion for summary judgment in this case.

The decree is affirmed.

GEORGE ROSE SMITH and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. As I read the majority opinion, the court has held that a covenant not to compete within a radius of 75 miles of the City of El Dorado for a period of five years, contained in a contract of employment of an insurance salesman, which is terminable at will, is unreasonable and therefore void and unenforceable as a matter of law. Since I am unable to join the majority in this gigantic leap from the previous position that the reasonableness or unreasonableness of such a covenant is a question of fact, I dissent.

It appears that the majority is satisfied to take this step, abruptly, and without any supporting authority or reasoning. Actually, the only case on the subject cited in the majority opinion is cited to support the statement that the courts have *always* examined the facts and circumstances of the *particular* case in determining the validity of a contract not to compete. But the majority does not follow *Miller* v. *Fairfield Bay,* 247 Ark. 565, 446 S.W. 2d 660, after citing it, unless it intends to

say that the trial court's considering the pleadings, the briefs filed there, and oral arguments is some kind of substitute for an evidentiary hearing.

In *Miller*, we said:

> We have pointed out that each case involving a restraint to compete must be determined by the facts of the particular case, and we have, accordingly, never laid down any rule governing provisions as to area or length of time. ***
>
> *****
>
> We conclude that, under the facts of this case, the contract, because of the length of the restriction not to compete, and the right of the employer to terminate employment, is against public policy, and void.

In between the two quotes the court does considerable weighing of the impact of evidence in the case.

This court has consistently followed the general rule that negative employment covenants are not illegal per se but that whether a restraint provision is valid depends upon its reasonableness, which is a matter to be determined under the particular circumstances. See *McLeod* v. *Meyer*, 237 Ark. 173, 372 S.W. 2d 220; *Bailey* v. *King*, 240 Ark. 245, 398 S.W. 2d 906; *McCumber* v. *Federated Implement & Hdw. Insurance Co.*, 230 Ark. 13, 320 S.W. 2d 637. In *Bailey*, we said:

> *** As we have pointed out, each case must stand upon its own facts. Here, there is no evidence that this was not a *bona fide* agreement. There is no evidence of trickery or chicanery.

In *McCumber*, we said:

> After a careful review of the legal and factual issues, we reach the conclusion that no injunction should have been issued under the state of facts here presented.

Significantly, in *Hultsman* v. *Carroll*, 177 Ark. 432, 6 S.W.

2d 551, we reversed a judgment sustaining a demurrer to such a complaint on a similar type of contract. The demurrer had raised the question whether the contract was void and unenforceable as a restraint of trade and contrary to public policy.

We have not been alone in that position, as demonstrated by the textwriter in 54 Am. Jur. 2d under the subject of Monopolies, Restraints of Trade, and Unfair Trade Practices. At p. 982, §543, he said:

> As a general rule, an employment contract provision barring the employee from competing with the employer after termination of the employment is enforceable if reasonable and supported by a valuable consideration. There is no inflexible formula for deciding the ubiquitous question of reasonableness. Precedents are of little value, because the question of reasonableness must be decided on an ad hoc basis. The question whether the agreement will be enforced is to be determined in view of the circumstances of the case, but a stricter test of reasonableness is applied in employment-covenant cases than in sale-covenant cases.
>
> There are certain elements which should always be considered in ascertaining the reasonableness of such agreements in employment cases, among which are the consideration supporting agreements, the *threatened danger to the employer* in the absence of such an agreement, *the economic hardship imposed on the employee* by such a covenant, and whether or not such a covenant would be inimical to the public interest. If, *considered with reference to the situation or objects of the parties or other circumstances under or with reference to which they were made, and* in the light of *all the surrounding circumstances*, the restraint appears to have been for a just and honest purpose, or the protection of the legitimate interests of the party in whose favor it is imposed, *reasonable as between them*, and not specially injurious to the public, the restraint will be upheld. An employee's anti-competitive covenant is unenforceable if its true purpose is to repress the employee and prevent him from leaving, rather than to protect the employer's business.

and then, at p. 983, §544:

> An employee's postemployment anticompetitive covenant is unreasonable and therefore *unenforceable where it is broader than necessary to protect the employer's business. ...*

further, at p. 984, §546:

> A postemployment anticompetitive covenant is justified *where part of the employee's services consist in creating the good will of customers and clients who are likely to follow him when he leaves.* The *territorial scope of an anticompetitive covenant is reasonable if the area of restraint is no broader than the territory in which the employee contacted the employer's customers.* Conversely, that *no customers have been pirated is a factor tending to render the covenant unenforceable.*

and, at p. 985, §548:

> That *an employee has no special skill* tends to show the unreasonableness of his postemployment anticompetitive covenant. **\***

and finally, at p. 985, §549:

> **\*** But the *employee's hardship is a factor* in determining the reasonableness of his anticompetitive covenant, and *in weighing hardship the court will consider general business conditions, possible deprivation of support of the employee and his family, and the necessity of the employee's changing his occupation or his residence.* (Emphasis mine in each quotation.)

What answers are given to the pertinent factual questions posed as italicized above in appellee's feeble, although effective, attempt to show that there were no genuine issues as to material facts? The majority has simply brushed this requirement aside without explanation, doubtless because there is none.

I would reverse the summary judgment and direct the court to proceed further in order that the facts and cir-

cumstances of the parties and their contract could be developed.

I am authorized to state that Mr. Justice GEORGE ROSE SMITH joins in this opinion.